## FITCH *et al v.* MILLER *et al.*

A sale made under order of the Probate Court, by a guardian of infant devisees under a will, of the real estate devised to his wards, will not be effectual to confer a valid title, unless the Probate Court acquired jurisdiction of the proceeding for sale by the presentation of a proper petition by the guardian.

The petition, in order to give jurisdiction, must contain the statement and showing required by section twenty-four of the Act to Provide for the Appointment and Prescribe the Duties of Guardians.

The necessity or expediency of the sale must arise from one or more of these circumstances : 1st. The existence of debts due from the ward, which cannot be paid out of his personal estate and the income of his real estate. 2d. The insufficiency of the income of the estate of the ward to maintain him and his family, or to educate his family, or to educate him when a minor. 3d. That it would be for the benefit of the ward that his real estate, or a part thereof, should be sold, and the proceeds put out at interest or invested in some productive stock.

The petition must set forth the condition of the estate; but it is only necessary to state the condition in such manner as to enable the Court to judge of the existence of one or more of the circumstances above specified.

The statute does not directly require, nor is it essential, that the value of the several items and parcels of property of which the estate consists should be stated.

The jurisdiction of the Court to order the sale depends upon the sufficiency of the averments of the petition, and not upon the truth of those averments. If the statements of a petition were untrue in fact, and in consequence thereof injustice should be done, this might furnish ground for setting aside the sale by a direct proceeding for that purpose; but it would not reach the point of jurisdiction, or authorize the sale to be treated as a nullity, when questioned collaterally.

So where the petition stated the interest of the wards in a certain rancho to be two thousand acres, when in reality it was four thousand acres, but asked the sale of their whole interest, and the order of sale and the sale and confirmation was of their whole interest : *Held*, that the mistake did not affect the jurisdiction of the Court or the validity of the purchaser's title.

In stating the facts and circumstances tending to show the necessity or expediency of the sale, it is not absolutely necessary that the petition should directly aver that there are debts to be paid, or that the income is not sufficient for the support and education of the wards, or that it would be for the benefit of the wards that the property should be sold and the proceeds put at interest. If, by a fair application of all the statements, it can be seen that one or more of these three contingencies exists, it is sufficient to give jurisdiction.

Thus, where a petition for the sale of an interest in the Sotoyome Rancho stated that the rancho was unproductive ; that the greater part of it was occupied by persons who refused to pay any rent, and who were cutting down and destroying trees ; and that it was subjected to heavy taxes, which would amount to more than the value of the land by the time all the infants should come of

age : *Held,* that these statements presented a case for the exercise of the judgment of the Court as to the necessity or expediency of the sale for the purpose of investment, and gave it jurisdiction to make the order.

A will by which interests in real estate were devised to certain infants, provided that the devisees might each " take out " one-half of his share when he should come of age, and the other half not until all the other children should come of age; and it was objected to the validity of a sale made by the guardian of the devisees, under order of the Probate Court, that the above provision of the will so controlled the disposition of the property that it was not the subject of sale by the guardian : *Held,* that whatever effect this provision might have in controlling the use of the property, the title to it, the estate of the devisees, vested in them upon the death of the testator, and this estate was the subject of sale under the provisions of the statute, and the effect of its sale was to transfer whatever estate the wards had to the purchaser.

The liability of the property of wards to be sold by their guardians, under the order of the Probate Court, is not affected by the fact that their testator died before the adoption of the common law in this State.

The fact that in a proceeding in the Probate Court for the purpose of obtaining a sale of the real estate of infant devisees, certain adult codevisees were allowed to appear, and their interests improperly made the subject of consideration in connection with the proceeding, and that these adults joined in the sale, and a partition incidentally resulted therefrom, are not sufficient irregularities to invalidate the sale. It is sufficient to support the sale that the facts rendering it necessary or expedient were brought before the Court by the petition of the guardian, and that the estate of the infants was duly ordered to be sold.

APPEAL from the District Court of the Seventh Judicial District.

This is an action of ejectment, brought by the appellants against the respondents, for land in Sonoma county.

Both parties claim title—the plaintiffs as devisees under the will of Henry D. Fitch—the defendants as purchasers under a guardian's sale, made by order of the Probate Court of Sonoma county.

In September, 1841, a grant was made by the proper authorities of California to Henry D. Fitch, of a tract of land called "Sotoyome," and in November, 1844, a further grant was made to him of three leagues of land, adjoining the tract first granted. These grants include the premises in controversy.

When these grants were made, Henry D. Fitch was married to Josefa Carrillo de Fitch. He died in January, 1849, leaving a will, by which he appointed, as his executors, his wife, Josefa Carrillo, and two of his sons, Henry Edward and Frederick ; and directed that after paying all his debts, his property should be divided in

equal shares, between his wife and all his children, so that his wife should take as much as either of the children, and that upon coming of age, each of his children should take out of the property the one-half coming to him or her, and the other half not until all his children should become of age.

He left nine children—three of whom were, on the eighth of January, 1856, the date of the institution of the proceedings in the Probate Court, which will be mentioned hereafter, over the age of twenty-one, and six under that age.

The claim to the land called " Sotoyome " was presented before the Board of Land Commissioners, in the name of the heirs of Henry D. Fitch, and confirmed, and a patent was issued to them by the United States, on the third day of April, 1858.

On the eighth of January, 1856, the widow and all the children of Henry D. Fitch being then residents of Sonoma county, the widow, Josefa Carrillo, was appointed by the Probate Court of that county, guardian of the six minor children, and gave the proper bond and qualified as guardian.   The appointment was made upon her own petition, and the request of four of the minor children, who were then over fourteen years of age.

On the same day she presented to the Probate Court a petition for the sale of the interest of the minors in the land called " Sotoyome."   In this petition she represented that the land was held in common and undivided by herself and all her children ; that the interest of each of her children was two thousand acres ; that the title was perfect, and had been confirmed by the Land Commissioners, and the United States District Court ; that it was almost wholly in possession of squatters, or persons holding without right, and who refused to pay any rent, or to surrender the possession ; that the timber upon the land was being cut down and destroyed by the persons in possession and other trespassers ; that the taxes upon it were onerous and of large amount, and before all of the minors attained the age of twenty-one would be more than the value of their respective interests ; that the other property of the testator, in which the minors had an interest (of which a schedule was annexed, and which consisted of lots and houses in San Diego, and a small amount of personal property) yielded some income, and could not be sold without

great loss and sacrifice; that her wards had no other means of support except those derived from the other property mentioned, and such pittance as she could furnish them from her own property; that her children who were of age desired the sale to be made of the interest of the minors, and if made upon certain terms would, together with herself, become parties to the sale—these terms being substantially as follows: that the land should be laid off into convenient tracts; that should any of the adult devisees, or should she as guardian of the minors, think proper to do so, they might bid in portions of the land, to an amount not exceeding their respective interests; that other purchasers should pay twenty-five per cent. of their bids in cash, and the balance within five years, or such less time as they might prefer, with interest at twelve per cent. per annum, payable semi-annually, giving a mortgage on the land purchased to secure the payment of such balance and interest, with a condition that if the interest should not be paid punctually, the principal should become due.

The petitioner further alleged upon her own knowledge, and the information of friends and relatives of the family, that if sold in this manner, the land would bring $100,000 or thereabouts, and that after paying all the debts due and chargeable to her wards, the interest on their respective shares would be sufficient for their support and education. A schedule of personal property, and of real property in San Diego, belonging to the estate, was attached to the petition.

On the day of the filing of this petition, the Probate Court made an order that all persons interested in the estate of Henry D. Fitch, deceased, and especially Henry Edward Fitch, Frederick Fitch, and William Fitch, the adult devisees, should be cited to appear on the fifth of February, 1856, and show cause why authority to sell should not be given to the guardian according to her petition.

On the fifth day of February, 1856, Henry Edward, Frederick and William Fitch filed their written acknowledgment of service of a copy of this order, and their consent to the sale being made as prayed, and the guardian having given the additional bond required by the Court upon the sale, the Court after a hearing, made an order; wherein, after reciting that it appears to the Court to be

"necessary, and that it will be for the benefit of the wards and each of them, in respect as well to their maintenance and education, as in order that the amount remaining over and above what is necessary for their maintenance and education be put out and invested," it was adjudged that the guardian "have leave and authority to sell (as well for the maintenance and education of the said several wards, and each of them, as that the proceeds remaining over and above what shall be sufficient for such maintenance and education may be put out and invested) at public auction, the right, title and interest of the minors (naming them) in and to the rancho and lands called "Sotoyome," etc.

And it was further ordered that the land be surveyed and subdivided into small tracts, of such extent as shall be most calculated to bring the best price; that at the sale the said guardian, Josefa Carrillo, and the said Henry Edward, Frederick and William Fitch, might bid off any of said tracts or subdivisions of land, to the amount that would be coming to them respectively; and that the terms of sale should be twenty-five per cent. cash, and the balance on a credit of three years, or such less time as the purchaser might desire, secured by the bonds of the purchasers, and a mortgage on the land, at an interest of not less than ten per cent. per annum, payable semi-annually; and with the further condition, that if the interest be not punctually paid, the whole principal should be due and payable at the option of the holder.

On the twenty-eighth of May, 1856, a sale was made by the guardian, under the authority of this order. Amongst the purchasers at this sale were Levi C. Frisbie, Walter H. Tompkins and A. M. Brown, and their separate purchases included the whole of the lands in possession of the defendants in this case.

On the twenty-ninth of May, 1856, the guardian returned to the Court her report of this sale, and on the same day a preliminary and brief order was made that a formal order should be entered confirming the sale, and thereupon the formal order of confirmation of that date was entered.

This order recites the order of the fifth of February, 1856, as an order for the sale of the right, title and interest of the minor children of Henry D. Fitch, deceased, in and to the Rancho Sotoyome,

as well for the maintenance and education of said minors, as that the residue, if any, should be put out at interest and invested for the benefit of said minors ; refers to the report of the sale of the twenty-eighth of May, 1856 ; states the sale, the names of the purchasers, the amounts of their respective bids, and the description of the several tracts of land ; and proceeds as follows : " the foregoing being the highest and best bids therefor respectively. And the said guardian having appeared before this Court on the twenty-ninth day of May, A. D. 1856, by E. O. Crosby, her counsel, and having moved for an order interlocutory confirming the sale of all those several tracts and parcels of land, herein above particularly described, to the several persons herein named as the purchasers, and the Probate Court having examined the proceedings upon the aforesaid order of sale, and having examined other persons on oath, touching the said value of the said lands and premises, and it appearing to the Probate Court that the said sale was legally made and fairly conducted, and that the sums bid for the several lots and parcels of land, herein above particularly described, were not disproportionate to their value, respectively, and were the highest and best sums bid therefor ; and the Court having on the twenty-ninth day of May, A. D. 1856, entered the said interlocutory order confirming the said sale of the lots and parcels of land herein last above particularly described, and that a formal order and decree should be prepared and entered in accordance therewith—it is ordered, adjudged and decreed, and the Probate Court, pursuant to the provisions of the statute concerning the power and duties of guardians in relation to the sale of real estate of their wards, and of minor children, doth order, adjudge and decree, that the said sale of the said lots and parcels of land, respectively, hereinbefore particularly described, so as aforesaid made by the said guardian, be and the same is hereby confirmed."

"And the said Probate Court, pursuant to the provisions of the statutes aforesaid, doth further order, and decree, and direct the said Josefa Carillo de Fitch, guardian, as aforesaid, to execute conveyances of the said several lots and parcels of land, hereinbefore particularly described, so sold by her as aforesaid, to the purchasers thereof respectively at the said sale.    And the said Probate Court

doth further order this decree to be entered at length upon the records of this Court."

On the twenty-sixth day of June, 1856, the guardian executed and delivered to Levi C. Frisbie, one of the purchasers at the sale of the twenty-eighth of May, a deed of several tracts of land sold to him on that day, and the sale of which had been confirmed by the decree above set forth.    The deed is very full and formal.    It refers to the order of sale and the record thereof, and recites that on the twenty-eighth of May, 1856, in pursuance of the adjournment of the former sale and of the notices, she caused the interest of the minors in the lands to be offered for sale at public vendue, at the Court house door in the town of Santa Rosa, the county seat; that the lands mentioned in the deed were struck off to L. C. Frisbie for $16,495, including the entire interest of the minors, and all other persons holding title with them, he being the highest and best bidder therefor; states the fact of her making report of the sale to the Court, the examination of the matter made by the Court, and its decree of confirmation and its direction to make conveyances to the purchaser, and refers to the record of this decree; and in the exercise of the authority of the guardian, and in consideration of the sum of $16,495, the receipt of which is acknowledged, grants, bargains, sells and conveys to said Frisbie, his heirs and assignees, all the right, title and interest of said minors in the several tracts of land described.    This deed was duly acknowledged and recorded.

On June 26th, 1856, the date of the above deed, another deed was executed and delivered by the widow and four adult heirs of Henry D. Fitch, deceased, with the wife of one of the heirs and the husband of another, to Levi C. Frisbie, of all the same parcels of land described in the last deed, and for a consideration stated of $16,495. This deed also was duly acknowledged and recorded.

On the twenty-sixth of June, 1856, two other deeds, in the same form, were executed and delivered by the same grantors to Walter H. Tompkins, and similar ones to A. M. Brown, conveying to Tompkins and Brown, respectively, other parcels of the land sold to them at the guardian's sale of the twenty-eighth of May, 1856. These deeds also were duly acknowledged and recorded.

The defendants claim severally by title derived from the pur-

chasers at the sale by the guardian.    It is admitted that they are purchasers for a valuable consideration, and hold through good and sufficient deeds of conveyance, made by those purchasers after the making and recording of the deeds above mentioned, and that the deeds under which defendants severally hold were duly acknowledged and recorded before the commencement of this action.

The evidence showed that the interest of each of the devisees in the ranch was four thousand acres, instead of two thousand acres, as stated in the petition.    The mistake arose from a supposition that the land being the common property of deceased and his wife, he was not capable of devising more than a half interest in it, and that the widow as such took the other half independent of the devise.

The foregoing facts being proven or admitted upon the trial, the Court instructed the jury to find for defendants, and a verdict for them was accordingly rendered.    The plaintiffs then moved for a new trial, for errors of law occurring at the trial, and for insufficiency of the evidence to justify the verdict, and that it was against law.    The motion was denied, and judgment entered for the defendants.    From the order refusing a new trial, and also from the judgment, the plaintiffs now appeal.

*Wallace & Newell,* for Appellants.

I.    The first important question presented in this case is, what interest the children had in the lands in controversy; whether it was to each heir the one undivided tenth part of the whole of the lands, or a one undivided tenth of the one-half; or in other words, whether the lands were the separate property of the ancestor, Henry D. Fitch, or were they the common property of him and his wife.

This grant comes fully within the case of *Scott* v. *Ward,* (13 Cal. 458) and *Noe* v. *Card et al.* (January T. 1860) and constitutes the land the property of the husband alone, and subject absolutely to the testamentary disposition made of it by the deceased. Upon the principle settled in these cases, these plaintiffs had devised to them the one-tenth each of the whole lands.

The next question is: What amount of their interest was at-

Fitch v. Miller.

tempted to be sold by the order of the Probate Court; was it all, or was it one-half? By a reference to the petition of the guardian for that order of sale, it will be seen that the petition represents the interest of the children as being two thousand acres each, and also represents the entire land in which they own their interest as being nine leagues. By a very simple calculation, it is found that two thousand acres is the one-tenth of one-half of nine leagues, and not one-tenth of the whole; and the interest which the guardian petitioned to procure a sale of, was the one-half of the interest they really possessed.

Then, so far as one-half of the interest of the infant children is concerned, it was not affected by the order or decree of the Probate Court, because only one-half of their interest was described in the petition, (see *Shriver's Lessee* v. *Lyon*, 2 How. 43–60) and plaintiffs are entitled to recover to the extent of one-fourth of the lands.

There was an interest to the extent of two thousand acres, or the one-half of the interest of each infant, sold by order of the Probate Court; and the defendants are in possession, claiming and clothed with whatever title was passed by virtue of those proceedings. If no title passed by these proceedings, the infants are entitled to one undivided half of the lands. If the title did pass under these proceedings, then the plaintiffs are entitled to an undivided fourth. But if only an interest of each, to the extent of two thousand acres, was affected by that decree, they are still entitled to the one undivided fourth.

II. The petition does not state facts sufficient to authorize a sale. The Probate Court has jurisdiction to order a sale upon the petition of the guardian for three purposes only: 1st. To pay debts against the ward; 2d, for support and education; 3d, for purposes of ininvestment. In each case the petition shall state the facts showing the necessity for the sale. (See Wood's Dig. 429, sec. 24.)

The Court cannot direct a sale for the first two purposes, unless the personal estate and the income of the real estate is insufficient for that purpose. (*Gregory* v. *McPherson*, 12 Cal.; *Bloom* v. *Burdick*, 1 Hill.; *Corwin* v. *Merritt*, 4 Barb. 428.)

This petition does not show those facts, but on the other hand

shows a state of facts contradicting them by exhibiting a schedule of the personal property.

The petition is insufficient to authorize a sale for the third purpose, to wit: investment, because it shows no fact requiring it; the only one stated being that the land was occupied by squatters, who would not pay rent. The same petition states that the infants' title is good, and sets forth a state of facts that would enable them to maintain ejectment against the squatters, and recover for the use and occupation of the land.

The reason shown for the sale, proves that a sale ought not to have been ordered till possession had been recovered of the land. To sell the land in the adverse possession of the squatters was to prevent competition among bidders, as no one would buy who had to incur a lawsuit in removing them.

III. The Court had no jurisdiction to order a sale of the lands for investment upon any state of facts.

These lands were disposed of by the last will and testament of Henry D. Fitch, deceased. By the terms of that will, this property was devised with a limitation upon the disposition of it by each heir, till he should arrive at the age of twenty-one years, to the extent of one-half, and a limitation as to the other half till the youngest child arrived at the age of twenty-one years. The testator possessed the power of imposing this restriction, and his intentions could not be defeated by the action of the Probate Court. (See *Williamson* v. *Berry*, 8 Howard, 544.)

IV. The law, in such cases, requires a sale if any disposition at all; in this case the petition and order of the Court proceed to barter off the land. The word sale has a definite meaning, well understood in law. The appellant proposed to prove that no money had been paid. In the case of *Williamson* v. *Berry*, above quoted, the Court used the following language: " We remark that sale is a word of precise legal import, both at law and in equity. It means at all times a contract between parties to give and pass rights of property for money." We also refer the Court to Noy's Maxims, chap. 42; Shepard's Touchstone, 244. Also on page five hundred and forty-eight the Court says: " At any sale under a decree or order in Chancery, the purchaser, before he pays his money, must not only sat-

24

isfy himself that the title to the property to be sold is good; but he must take care that it has been made according to the decree or order. If he takes a title under an imperfect sale, he must abide the consequences."

V. But admitting that the decree is correct in form, in allowing preference among the adult heirs to buy without paying money, and also that the will did not bar the right to sell—then had the Probate Court any jurisdiction, the will having become executed under the Mexican law? (See *Castro* v. *Castro*, 6 Cal. 158; and *Grimes* v. *Norris*, Id. 621.) It is decided in these cases, that a will made under the Mexican law is a conveyance, and that our Probate laws have no effect upon them whatever. In the latter case it is further held, that the Probate Court is an inferior Court, and cannot take jurisdiction or administer remedies other than those given in and in the manner prescribed by the statute. (*Grimes* v. *Norris*, above cited; *Jones* v. *Reid*, 1 Johns. 20.)

In the latter case, the Court says: " It is a clear and salutary principle, that inferior jurisdictions, not proceeding according to the course of the common law, are confined strictly to the authority given them. They cannot take anything by implication, but must show the power expressly given them in every instance."

" No intendment is made in favor of the regularity of proceedings of Courts, or officers of inferior or special jurisdiction." (*Bloom* v. *Burdick*, 1 Hill. 130; *Denning* v. *Corwin*, 11 Wend. 651; *Van Elten* v. *Jilson*, 6 Cal. 19; *Small* v. *Gwinn*, Id. 449; *Whitwell* v. *Barbier*, 7 Id. 64; *Feillett* v. *Engles*, 8 Id. 76.)

In *Bloom* v. *Burdick*, (1 Hill. 130) the Court says: " It is a cardinal principle in the administration of justice, that no man can be condemned or divested of his right until he has had the opportunity of being heard. He must, either by serving process, publishing notice, appointing a guardian, or in some other way, be brought into Court. If judgment is rendered against him before this is done, the proceeding will be as utterly void as though the Court had undertaken to act where the subject matter was not within its cognizance. This is the rule in relation to all Courts, with only this difference: that the jurisdiction of a superior Court will be presumed, until the contrary appears; whereas an inferior

Court, and those claiming under its authority, must show that it had jurisdiction. (*Foot* v. *Stevens,* 17 Wend. 483 ; *Hart* v. *Seixas,* 21 Id. 40.) The Surrogate Court is one of inferior jurisdiction ; it is a mere creature of the statute. (*Dakin* v. *Hudson,* 6 Cow. 221 ; *Rhodes* v. *Silver,* 6 Wash. C. C. R. 716 ; *Den* v. *Lambert,* 1 Greene, 182 ; *Hendrick* v. *Cleaveland,* 2 Vt. 329 ; *Mathewson* v. *Sprague,* 1 Curtis, 457.)

*Baldwin & Haggin,* also for Appellants.

I.   The decree of sale is void, because the petition states no facts which authorize the Court to make the order. (*Townsend* v. *Gorden,* 19 Cal. 188, and cases cited in respondents' brief.) A case is not made out under the fifteenth section of the act. (Wood's Dig. 431.) Because—1st, there were no debts ; and 2d, the personal estate (see schedule to the petition) was sufficient for the maintenance of the ward, and there is no averment in the petition to the contrary. Nor under section twenty, for the same reasons. (*Query*—Is there any authority to sell the real estate for the maintenance of the ward, he being unmarried and a minor ?) Nor under section twenty-one. That section is in these words : " When it shall appear to the satisfaction of the Court, upon the petition of the guardian, that it would be for the benefit of his ward that his real estate, or any part thereof, should be sold, and the proceeds thereof put out on interest, or invested in some productive stock, his guardian may sell the same for that purpose, upon obtaining an order therefor, and proceeding therein as hereinafter provided."

The petition makes no case under this section. It does not state the condition of the estate. This means not the condition of the property proposed to be sold, but of all the estate ; the object of this is to enable the Court to judge whether it is best to sell the particular property proposed to be sold. Whether one particular piece of property ought to be sold or not, might depend upon the facts respecting the title, value, etc., of the rest ; and how much is to be sold, certainly might depend upon these facts. Now " condition " is a general term, involving title, value, locality, etc.

The estate is attempted to be described by numbers of lots and.

cattle, etc., but mere quantity is given and not condition—not even value. If "condition," however, means the financial *status* of the estate, value would seem to be an indispensable element; and no value is given.

It is enough that the law prescribes this as an indispensable requirement; and whether there be any reason for it or not, the law is imperative. (*Gregory* v. *McPherson*, 13 Cal. 576 ; see reasoning in this case affirmed in *Townsend* v. *Gorden*, 19 Cal. 188 ; see also Bronson's opinion in *Bloom* v. *Burdick*, 1 Hill. 133.) It is impossible to hold that the doctrine of these cases is true, and hold that this averment, as to the condition of the estate, is not a jurisdictional fact. The extent and value of the tract proposed to be sold are not given.

II.   The petition is not for a sale for investment at all in stock, or to be put out at interest.   It is really a proceeding for partition, which the Probate Court had no right to take cognizance of in this form, or in any form ; or if not so, then the decree is void, because the petition and the decree pray for and make, not a sale for investment, but a conditional partition ; because there might or might not be a sale, at the option of the parties.   The Court had power, under proper proceedings, to order the sale ; but the attributes of a sale must exist.   (See 8 How. 540.)   It must not be either directly or conditionally a mere partition.

The Court had no power to make an exchange of lands for the heirs, at the option of adults or the guardian.   It must be made a sale for investment.

It had no right to clog the sale with unusual conditions.   It had no right to authorize a bid by particular parties for the infants' land on credit, or to allow the adults to bid for the infants' land to the extent of their interest in the general tract.   This privilege was presenting illegal terms for the sale, which invalidated it, as much as if the medium of payment had been changed to something not receivable by law for debts, or as if the Court itself had fixed the prices, etc.   It was, in effect, not a sale at auction of the infants' land ; but a private sale, or a sale public in form, but governed by private restrictions, understandings and stipulations.   (*Williamson* v. *Berry*, 8 How. 496.)

III.   For a like reason it was void.   It was a sale not of the property of the infants, but a joint sale of the property of the infants and adults ; not a sale by law, but a sale by agreement.   The Probate Court had no right to order any such sale ; it was dealing with the infants' estate, and could not confound their interests with the interests of other parties, producing thereby delay and confusion, leading to litigation and loss.

The statute prescribes the sale, the manner, the effect, etc., and the Probate Court has no authority to order any other sale.   It might as well order a sale, with a right to particular parties to buy in certain county scrip or warrants.   A sale at public outcry, within the meaning of the statute, is a sale in which all bidders stand on terms of equality, with equal rights and privileges.   Any other sale is as illegal as would be a Sheriff's sale for notes, etc.

IV.   The decree is void under the twenty-first section, for the reason that this property was devised by will, and the disposition and tenure of it fixed by the will.

The statute, in such cases, does not give any authority to the Probate Court to sell for investment.   If it could in any case, it could not in this ; for the title under the will had vested in the heirs before the statute, (*Norris* v. *Grimes*, 6 Cal. 621) and the statute could not divest it or change the tenure.

As a testator may dispose of his property to take effect after his death, so he may qualify the title ; and this right of qualification comes from the same general dominion which enables him to devise the property.   The qualification is as sacred as the property.   If we concede the power of the father to will his property to his child, we must concede his power to prescribe the terms on which the child is to take it.   The Probate Court cannot interfere with those terms.   This would be to deny the power of the father to provide from his own property for his child, in his own way.   It would be vesting an absolute power in the Probate Court over estates, and to set aside the disposition of the testator.   The Probate Court does not stand in *loco parentis*.   No Court has power to interfere in such a case, except by special act.

We deny that any Court, either Chancery or otherwise, can interfere with the testator's disposition of his property by will.   The

remedy is solely with the Legislature, and this is the practice. (See *Williamson* v. *Berry*, 8 How. 540.)

But if Chancery *would* interfere in cases of testamentary limitation, it would do so only in peculiar instances; when the testator, if living, from unforeseen causes would himself make the change; and this case must be shown by the bill.

The question is not what the Chancellor would do originally, but what the testator would do now. The Court places itself in the place of the parent, giving effect to his disposition; but supposing from unforeseen circumstances, that if living, he would alter the will? It does not undertake to make a new will for him, or to alter the old will; for as it is the law that he may make a will, so it is the law that the dispositions of the will shall prevail. The twenty-first section of the Probate Act was not designed to extend the power of the Court, or to establish the unheard of power of judicial revocation of wills; and it must be construed, therefore, to refer only to cases where the testator has not fixed the disposition of his property, as to the time and mode of enjoyment, by will. A different principle would lead to infinite confusion and injustice, and starts with ignoring one of the plainest rights of the testator.

If the exceptional right of changing the disposition of the will exists at all, it must exist in the Chancery Court, where the case would be tried as an exceptional case, and where the peculiar circumstances which give equity would have to be stated and proved; and it cannot be asserted in the Probate Court as a general right, to be exercised in all cases, whenever the Probate Court deems it proper, in its judgment, to overturn the directions of the will. Unless this be so, the section should read: " An Act giving power to the Probate Court to set aside wills whenever they think proper." (8 How. 540.)

The will in this case operated as a deed, and by it the minors were not to sell or to dispose of the property until they all came of age. This intent of the testator, as grantor, was defeated by this Probate decree.

The property was already invested and secured to the children as the testator himself wished, and the Probate Court had no right to change the property for the purpose of another mode of investment.

This case presents a melancholy proof of the folly of allowing a County Judge to overrule the father in the provision the latter made for his children.

V.   The decree is void, because the petition does not correctly' describe the property to be sold.   It is erroneous in two particulars. It does not give the particular interest, or the general sum of the estate.   It states the quantum of the interest of each minor to be two thousand acres—it was four thousand.

Now as the facts must be stated, this case is brought directly within the case of *Townsend* v. *Gorden*.   The object of the statement is to furnish the Court with materials for its judgment.   As the Court must pronounce on the propriety of the sale, so it must be furnished with materials for its judgment.   It does not follow, because two thousand acres should be sold for the purpose of investment, that four thousand should be sold for the same purpose.

Indeed, it would be a good answer to a petition for a sale, that the quantity of land was so great; at least, this would be an objection to a sale of all of it.   But it is not material what the Court would have done.   The law is plain that the mistake is fatal. But the answer is, that the mistake is a mistake of law.   It looks very much like a mistake of fact, and it is not material whether the mistake of fact was induced by a mistake of law or not.   But how does it appear that the error was one of law?   It did not follow, because the papers were set out, that this property was *not* common property.   It might have been, and the petition asserts it was.   It was so considered.   The fact that the decree orders the sale of all the interest is nothing, or that the petition prays for a sale of all the interest.   According to this argument, if a single acre were asked to be sold in a given tract, the whole ranch would pass if the infant owned it.   The interest must be specified.   If the petition failed to describe the quantum of interest, but merely asked to sell the interest of the heir, the description would be fatally defective.

Is it any better when the quantum as given is half, or less than the amount?   The interest of the heir, following the specific definition, was not intended to embrace a larger quantity than that given, or to refer to other land than that given.   The two phrases are to

be taken together, and refer to the same estate. But we deny that it is at all important, in this respect, whether the mistake was one of law or fact.

If the guardian construing a difficult will, should petition for the sale of an acre of land, and it turned out that the ward was entitled to a thousand acres, would any one hold the mistake unimportant, because he was misled into the statement by a misconstruction of the will? The fact stated was as to the quantity of the interest; that fact was important to determine the propriety of the sale. The statement was a mistake of fact; it does not appear that it originated in a mistake of law, and if it did, it comes to precisely the same thing. The mistake was just as injurious, and neither reason nor authority shows any distinction between mistakes arising from misconceptions of law and any other causes of error. In *Townsend* v. *Gorden*, the property in suit was left out, we presume by mistake of law, in supposing there was no necessity to put it in; but this did not cure the error.

The petition is upon special facts, with a prayer for particular relief and for general relief. In such a case the Court can only grant that special relief, or such general relief as may be applicable to the particular facts set forth. (*Truebody* v. *Jacobson*, 2 Cal. 269; Story's Eq. Pl. secs. 41, 42.)

If the Court could make no decree upon the special facts, this defect is not cured by the prayer for general relief, for the defendant may well be surprised by any such general relief. (Id.)

VI. The decree is void, because the petition for the sale was made immediately on the appointment of the guardian.

This could not be done. The statute contemplates that a sale of the ward's land shall only be made when it is shown that the estate is insufficient to pay the ward's expenses, or furnish him the means of support. But some effort must be made to make the estate productive, or at least, some opportunity given to ascertain the fact of deficiency, etc., or the reverse. The guardian has no right to assume that the property cannot be made available for the ward's support.

The true meaning of the statute is, that the estate in the hands and under the management of the guardian has been ascertained, after the management and control of it have been tried, to be insufficient.

Fitch v. Miller.

*Crockett & Crittenden*, for Respondents.

I. It is contended that only an interest to the extent of two thousand acres—that is, one-half of the interest of each of the minors in the land—was sold under the order of the Probate Court.

The record of the proceedings of the Probate Court shows, on the contrary, that all the interest of the minors was intended and ordered to be sold, and was actually sold.

It is true, that in the guardian's petition for an order of sale an error was committed, in stating the quantity of interest of each of the minors. It was represented to be about two thousand acres, when in fact it was twice as great; and the error in this statement may have originated, as suggested by the appellant's counsel, in the supposition that the property, having been acquired after the testator's marriage, was common property, and that one-half of it belonged to the guardian herself as his widow.

But the error is one which could not have influenced the action of the Probate Court. The will of Henry D. Fitch was before that Court, and all the facts in regard to the origin and nature of the title of the minors to the land. It is to be presumed that the Court applied the law correctly, and according to its own judgment, and without any regard to the erroneous legal conclusion of the guardian in respect to the comparative interests of herself and her children; and that it dealt with the subject in view of the interests of the minors under the law, and not as they existed in the apprehension of the guardian.

The error might have been material, and might have presented most formidable ground of objection, if the petition and order of sale had been in the form which is assumed by the argument of appellant's counsel. If the petition had been only for the sale of an interest of each of the minors to the extent of two thousand acres, and the Court had ordered a sale only of that interest, yet the guardian had proceeded to sell the whole and a greater interest, she would have exceeded her authority, and the sale would have been void for the excess. Perhaps even a confirmation by the Court of such a sale would not have given it validity. It is to just such a case as the one now supposed that *Shriver's Leseee* v. *Lynn et al.*, (2 How. 43) cited by appellants' counsel, refers.

But this case is different. Here the petition of the guardian was for the sale of the whole interest of the minors in the land, and they were all before the Court; the order of the Court was for the sale of all the right, title and interest of the minors; the sale was made of all their right, title and interest; and that sale was confirmed.

The error of the guardian in stating her opinion as to the extent of the interest of each minor, did not mislead the Court, and was not the cause of this action. Neither the petition nor the order was for a sale of an interest of each minor to the extent of two thousand acres, but of the entire interest, whatever it might be.

It is said that this error may have induced the Judge to order the sale, when, had he known that the interest was twice as great as represented, he might have ordered a sale of only a part of the interest of each minor, or refused the order altogether. This is to allege merely that the Judge was mistaken as to the law; that with the facts before him, he had adopted the erroneous legal conclusion of the guardian. We might safely admit that he did so err, and was led into the error by the guardian, and that, but for that error, he would have refused the order. That would only show that in the exercise of its jurisdiction the Court erred; it would not show that the Court had no jurisdiction, and that its proceedings are void. It is the latter proposition that must be established by the appellants before they can recover from the respondents, who purchased the land upon the faith of the decrees of sale and confirmation. No mere irregularity will aid the appellants in this action, in which the order of the Court is collaterally questioned.

It has been said by this Court, in *Stuart* v. *Allen*, (16 Cal. 473) that "it is immaterial, so far as the question of jurisdiction is concerned, whether the statements of the petition are true or not—the jurisdiction resting upon the averments of the petition, not upon proof of them." This is a plain principle, too often recognized by Courts to be now controvertible. If the guardian had alleged in her petition that the Rancho Sotoyome contained only four and a half leagues, and that each of the minors had an interest to the extent of two thousand acres, and had prayed that a sale of the whole interest of the minors should be made, and the sale had been ordered and made of their interest, it could not have affected the jurisdiction

Fitch v. Miller.

of the Court.    Much less could such a result be produced by the error actually committed by the guardian, which was one of law.

If, in the case supposed of misrepresentation or error in respect to the quantity of land in the rancho, a sale had been ordered and made of the interest of the minors, without any measurement, there might have been room for a proceeding against the original purchasers, to set aside the sale on the ground of gross mistake.    But that is a very different question from the one of jurisdiction.    And it is to be observed that here there is no such ground, because by the order the land was to be surveyed before the sale, and divided into suitable tracts, and it was so surveyed and sold.

Further, this question of the extent of the interest of the minors is one which could not by any possibility affect a purchaser, for the sale was made of the whole land.    The widow and adult heirs united in it.    The whole purchase money came to the guardian's hands, and it is to be presumed she retained the full proportion coming to the minors.    We submit, therefore, that if any interest of the minors passed by the sale, their whole interest passed to the purchasers.

II. The appellants assert, however, that no title whatever passed by virtue of the sale and conveyances made by order of the Probate Court, because, first, the petition does not state facts sufficient to authorize a sale ; and second, the will of the testator prohibited the action of the Court.

1st.  As to the sufficiency of the petition.    From the form in which the appellants' counsel state their proposition, they seem to suppose that if the facts stated are not sufficient to authorize a sale, it would necessarily follow that no title passed by the sale. But this is unquestionably not so.    The distinction must be kept in view between what is requisite to give the Court power to act at all, and what is requisite to justify its action in a particular manner ; between questions of jurisdiction and questions of regularity ; between that class of objections which make the act of a Court absolutely void, and that other class which make its act voidable on appeal.

Now, a petition to the Probate Court may be sufficient to give jurisdiction, though upon the facts stated in it the action of the

Court is clearly erroneous. For example : an administrator apply-
ing for a sale of real estate, must show certain things in respect to
the condition of the estate, in order to give the Court jurisdiction.
(Sec. 155, Probate Act.) In accordance with this requirement he
presents his verified petition, setting forth " the amount of personal
estate that has come to his hands, and how much thereof remains
undisposed of; the debts outstanding against the deceased, a de-
scription of all the real estate of which the intestate died seized, and
the condition and value of the respective portions and lots, and the
names and ages of the heirs of the deceased ; thereupon, due notice
being given, the jurisdiction attaches, and no error of the Court in
determining upon the petition will render its decree void, or affect
the title of a purchaser. Though it may be perfectly apparent,
upon the showing of the administrator, that no sale is necessary ;
though a reversal of the order of sale on appeal would be inevitable ;
yet if the Court makes such an order, and no appeal is prosecuted,
and it is carried into effect, and the sale made and confirmed, it can
never be questioned, and the title acquired by the purchaser is as
perfect as if the legal conclusion of the Court involved in the order
had been fully warranted by the facts.

For such an error of law, the order can no more be drawn in
question collaterally than it could be for error in fact, as if the
facts stated in the petition were sufficient to give jurisdiction and
to justify the order, but were untrue.

The principle that the judgment of a Court is conclusive, and
cannot be collaterally attacked, is just as applicable to the proceed-
ings of Courts of limited jurisdiction, when that jurisdiction has
once attached, as to the proceedings of Courts of general jurisdic-
tion; and it has been recognized in cases innumerable. The au-
thorities in support of it are collected in 4 Phil. on Ev., Cowen &
Hill's notes, pp. 11, 12, 64, 65, 139–42, 179–80, 297. (And see
*Jackson* v. *Robinson,* 4 Wend. 436 ; *Jackson* v. *Crawford,* 12 Id.
533 ; *Sheldon* v. *Wright,* 1 Selden, 512 ; *Stuart* v. *Allen,* 16 Cal.
473 ; *Perkins* v. *Fairfield,* 11 Mass. 226 ; *Thompson* v. *Tolmic,*
2 Pet. 157 ; *Grignon's Lessee* v. *Astor,* 2 How. 341 ; *McPherson*
v. *Cunliff,* 11 Serg. & Rawle, 433 ; *Lightfoot* v. *Doe,* 1 Ala. 479 ;
*Alexander* v. *Maverick,* 18 Tex. 196 ; *George* v. *Waters,* 19 Id.

370 ; *Hyman* v. *Campbell*, 6 Porter, 219 ; *Lynch* v. *Baxter*, 4 Tex. 441 ; *Thompson* v. *Tolmie*, 2 Pet. 157 ; *Estate of Cook*, 14 Cal. 129 ; *Sargeant* v. *State Bank of Indiana*, 12 How. 385 ; *United States* v. *Aredondo*, 6 Pet. 729 ; 4 Phil. on Ev. 62, n. 42.)

These cases fully establish the doctrine, that when once the Probate Court has acquired jurisdiction, no matter " how extraordinary or erroneous " its determination and proceedings may be, its judgment or decree cannot be impeached or invalidated in a collateral action ; and that a purchaser under an order of the Court can be affected by no error or mistake of the Court, and need look no further back than to the order itself.

The appellants here must show, not that the petition was " insufficient to authorize a sale," but insufficient to give the Probate Court jurisdiction.   This must be determined by the statute.   The cases in which a guardian may sell his ward's land are specified in the fifteenth, twentieth and twenty-first sections of the Act to provide for the Appointment and prescribe the Duties of Guardians. (Wood's Dig. 429.)

Certainly, the petition of Josefa Carrillo de Fitch, as guardian, presented one of the cases mentioned in the statute ; for the very ground of the application was that the income of the estate of the minors, as it then existed, was not sufficient to maintain and educate them, and the very object of the proposed sale was so to convert it as to provide for their support and education.

Was the case properly presented, and in such form as to give to the Court power to act in the matter ?   All that is required by the statute to obtain an order of sale is, that " the guardian shall present to the Probate Court of the county in which he was appointed guardian, a petition therefor, setting forth the condition of the estate of his ward, and the facts and circumstances on which the petition is founded, tending to show the necessity or expediency of a sale ; which petition shall be verified by the oath of the petitioner."

Here the petition was presented to the Probate Court of the county in which she was appointed ; it was verified ; it set forth the condition of the estate of the wards ; and it stated various facts and circumstances as tending to show that a sale was necessary or expedient.   Literally, and fully, it complied with the statute.

It is contended, however, by the appellant's counsel, ·that the Probate Court cannot direct a sale for the purpose of paying the debts of a minor, or providing for his support and education, unless the personal estate and the income of the real estate is insufficient for that purpose ; and upon this point they cite *Bloom* v. *Burdick*, 1 Hill ; *Corwin* v. *Merritt*, 4 Barb. ; and *Gregory* v. *McPherson*, 13 Cal. 562.

If this were so, it would not touch the question of jurisdiction, and, consequently, would not affect the validity of the sale.

In relation to sales by administrators, our statute (Probate Act, secs. 154–5) says, that when the personal estate is insufficient, the administrator may sell real estate upon the order of the Court, and that to obtain such order he shall in his petition " set forth the amount of personal estate that has come to his hands, and how much thereof, if any, remains undisposed of;" thus, according to the above authorities, making these averments essential to give jurisdiction.

The guardian is only required to set forth " the condition of the estate of his ward."

In the one instance a specific averment is required of a particular fact going to show the condition of the estate.    If that averment is not made, it might reasonably be urged that no foundation was laid for the action of the Court. In the other instance, the statute specifies no particulars, but demands merely a statement of the condition of the estate, which, of course, may be in terms more or less general and indefinite.    If not sufficiently explicit, the Court may require a further showing, but no specified averments being made essential by the statute, an insufficient statement would give no ground for a question of jurisdiction.    It is to be observed, that in respect to all the proceedings preliminary to, and which are the foundation of, a sale of property, there are marked differences between those provisions of our statute which relate to sales by executors and administrators, and those which relate to sales by guardians, the law plainly intending to give to the Court in the latter case a much wider discretion, and one less trammeled in its exercise.

Even if it were essential that a guardian, as well as an adminis-

trator, should show by his petition what personal estate has come to his hands, and how much of it remains undisposed of, it has been done here; for the guardian's petition shows all the property belonging to the estate, and under the ruling of this Court in *Stuart* v. *Allen*, that is sufficient.

But the appellants' counsel is altogether mistaken in supposing that the statute requires anything of the sort. It is true that a sale to pay debts (Wood's Dig. 429, sec. 15) can only be made when the personal estate, and the income of the real estate, are insufficient to pay them; but there is no such restriction whatever in respect to sales for the maintenance and education of a minor. The statute only provides that " when the income of the estate of any person under guardianship shall not be sufficient to maintain the ward and his family, or to educate his family, or to educate the ward when a minor, his guardian may sell his real estate for that purpose, upon obtaining an order therefor," etc. It draws no distinction whatever between real and personal estate, but makes the sale of real estate dependent only upon the contingency of an insufficiency of the income of the whole estate, real and personal ; and that fact the guardian in her petition did allege and show.

The material fact, and the only one which it can be contended it was requisite to state in order to give jurisdiction to the Court, was the fact that the income of the estate was insufficient for the maintenance and education of the minors. The statement of other facts, by way of argument, and as special and peculiar reasons for the action of the Court, could not divest its jurisdiction. In the language of this Court in *Stuart* v. *Allen*, " so far the petition presented all the facts necessary to give the Court jurisdiction of the matter of the sale ; and this was enough, whatever else was inserted, to support its action when attacked collaterally."

If this be not so, then every purchaser at a guardian's sale is a guarantor of the correctness of the conclusion drawn by the Judge from the facts presented upon the application, and takes a title subject to be divested either by a reversal of the order of sale on appeal, or by the opinion of some other Judge, in a collateral action, that it was error to make the order.

2d. It is contended that the Probate Court had no jurisdiction,

because the will of Henry D. Fitch prohibited the disposition of the property, and to make the sale was to defeat the intention of the will.

The appellants' counsel, we think, is mistaken in supposing that the clause in reference to the taking out of his share by each devisee, one-half on his coming of age, and one-half on the coming of age of all the devisees, imposes any restriction upon the power of the heirs to dispose of their respective interests. Its effect was only to postpone their actual enjoyment of the property. The interest of each heir in his share vested upon the death of the testator, but the heir was only to take possession of one-half when he should become of age, and of the other half when the youngest heir should become of age. It was a devise of the property, subject to a temporary possession of another, with a right probably in the heir to all the profits and income of his share from the time the title vested in him, because the will makes no other disposition of such profits and income, and expresses no intention that they shall be applied to the common benefit of all the heirs. The title being in the heir, he could certainly sell subject to the delay of possession, and could give to the purchaser the right he himself had to the income of the property until the right of possession should arise. The effect of this clause is the same as if there had been a devise of land subject to a lease by the testator for a term of years, it being directed by the will that the devisee should have the rents and profits until the expiration of the term. Who would contend, in such a case, either that the devisee had no disposing power over the property subject to the lease, or that the Probate Court could not direct its sale if the devisee were a minor?

The power of the Probate Court extends to the sale of any "real estate" of the minor. It is not in any manner dependent upon the condition of the estate in respect to the minor's right of possession and enjoyment. The statute imposes no condition, even that such a sale shall not be made contrary to the provisions of the will under which it was acquired. It gives to the Probate Court all that jurisdiction over the estates of minors, and the disposition of them for the support and maintenance of minors, which in England, and in many of the United States, is exercised by Courts of Chancery.

Fitch *v.* Miller.

And these Courts have, in innumerable instances, where not prohibited by positive law, allowed maintenance to infants, contrary to the directions of wills under which they claimed, and not only out of the income of their estate, but out of the principal, and even out of the income of property in which the infants had only a contingent or defeasable interest.   (*Inwood* v. *Twyne*, Amb. 419; *Brown* v. *Temperley*, 3 Russ. 263; *McDermot* v. *Kealsy*, Id. 264; and see the numerous authorities on this point referred to by Mr. Justice Nelson in *Williamson* v. *Berry*, 8 How. 556.)

Some of these authorities, it is true, distinguish between real and personal estate, in the exercise of this power, because of the consequences which would follow from a change of real into personal estate; but such distinctions are inapplicable here, where no such consequences result, and still more clearly inapplicable in a question like this, concerning the power of the Probate Court, because that Court is expressly authorized to sell real estate, as well as personal, to provide support and maintenance for infants.   And this distinction does not weaken the force of those authorities upon the proposition for which we cite them, which is, that Courts of Chancery have always taken it upon themselves to disregard the provisions of a will in this matter.

If, then, the will of Henry D. Fitch were construed to prohibit any alienation of the interest of the minors, until the youngest should become of age, or to direct an accumulation till that time— neither of which constructions can be given—it would not divest the Court of the power which the law has conferred, and which is an unlimited power, to direct a sale whensoever it appears to the Court that "it is necessary, or would be beneficial to the ward," that his real estate should be sold.

This is the same enlarged authority which was conferred upon the Court of Chancery in New York by the Act of the ninth of April, 1814, (Laws of 1814, 128) and without that restriction afterwards imposed by statute in that State, "that nothing contained in this Act should authorize the sale or disposition of any lands or term against the provisions of any last will or conveyance."

The case of *Williamson* v. *Berry* (8 How. 495) cited by appellants' counsel, we rely upon as strongly in our favor.   (See, also,

25

*Clark* v. *Van Surley*, 15 Wend. 436 ; and *Cochran* v. *Van Surley*, 20 Wend. 365.)

The question of the unconstitutionality of these Acts was raised in these cases, not on the ground that it was beyond the power of the Legislature to authorize a disposition of the estate of minors in violation of the will, for it seems to have been conceded that this could be done by a general law; but on the ground that it was done by a private act.    Those Courts declared these Acts constitutional, and they went further than the Supreme Court of the United States, for they held that the objections urged against the proceedings of the Chancellor, however well founded, did not make them void, and they could not be collaterally attacked.    We respectfully refer the Court to the opinions of Mr. Justice Bronson in 15 Wend. 439, and Chancellor Walworth in 20 Wend. 370, as conclusive arguments, both upon reason and authority, in support of the power of the Legislature to make proper provision for infants, or to change the form of their estate, in defiance of the will under which they hold their property.    As Mr. Justice Bronson observes, to affirm that the exercise of such a power deprives an infant of any constitutional right, " is little better than saying that an infant has a constitutional right to grow up in ignorance, or enjoy the chartered privilege of suffering for the want of necessary food and raiment."

3d.    The appellants further contend that, instead of selling the land, the Court proceeded to barter it off, and they quote from the opinion of the majority of the Court in *Williamson* v. *Berry*, certain remarks as to the meaning of the word " sale."

However correct that opinion may be, it has no application to the case before this Court.    The facts are altogether different.    Here was no order for an exchange of lands, nor for any conveyance in satisfaction of antecedent debts, but for a sale of the interest of the minors in the land.    The words of the order are, " that the said Josefa Carrillo de Fitch have leave and authority to sell, at public auction, the right, title and interest of the said minor children," etc., " in and to the rancho and lands called Sotoyome, situated in the county of Sonoma."    The order then proceeds to give directions as to the manner in which the sale should be made, and as to the

Fitch *v*. Miller.

division of it into suitable parcels ; and, in accordance with the petition, it permits the widow and adult heirs to become purchasers to the extent of their respective interests.

It is the last clause which the appellants' counsel supposes to change the character of the transaction, and make it something else than a sale for money or on time. But this is not so. The land was held in undivided interests by the guardian, the adult heirs, and the minor heirs. A sale of the interests of the minor heirs alone would not have realized as much, nor have been so beneficial to them, as if their interests were sold in connection with those of all their cotenants. This was the representation of the guardian, and she and the adult heirs consented to unite in the sale, so as to give to each purchaser a full and complete title to a specified tract. They only reserved to themselves the right to bid to the extent of their several interests. If they should go beyond that, they were to occupy the position of any other purchaser. The result was to effect a sale upon the terms prescribed in the order—that is, for cash, or notes and mortgages—of all the interests of the minors, for an enhanced price. Nothing would remain to be done after the sale but a division of the proceeds.

This mode of making the sale was greatly to the advantage of the minors, and it was certainly competent for the Court to direct it to be so made. The Court has a general authority in this matter, and is not limited in the exercise of its power to a specified mode of sale. It may take into consideration the condition of the title, and the peculiar circumstances of the estate of the minors, and so order the sale as to make their property bring the best price. That it was intended to confer such a discretion results from the reason and necessity of the case, and from the absence of any negative provision in the law, and from the power given in respect to the terms of sale and the time of payment.

Under the same circumstances, and under a law similar to our own, a sale in the same manner was made in the State of Texas. (*Reid* v. *Allen*, 18 Texas, 242.)

III. There is yet another proposition of the appellants' counsel in denial of the jurisdiction of the Probate Court.

It is, that the will having been executed under the Mexican law,

the estate of the minors was beyond the reach of the Probate Court, and that Court could neither appoint a guardian, nor order a sale. The authorities relied on to support this idea are *Castro* v. *Castro*, 6 Cal. 158, and *Grimes* v. *Norris*, 6 Id. 621.

The former case decides that in England and the United States a will is regarded as a conveyance, and takes effect as a deed, on proof of its execution, unless there be some express statute requiring it to be probated ; that it did not appear that there ever was a Court of Probate in California under the Mexican rule, and that devisees under a will became, therefore, immediately entitled upon the death of the testator. The latter case affirms this doctrine, and holds that our statute does not require wills, made prior to the passage of the statute of wills, to be probated, and, consequently, that the Probate Court had no jurisdiction to pass upon such a will.

Now, it would seem that the vesting of the estate in a minor immediately upon the death of the testator, should be a reason why the Court ought to appoint him a guardian, and why there ought to be, somewhere, authority to manage his estate. Nor can we perceive the force of the argument that nobody ought to be appointed to administer a minor's estate, because he has an estate to be administered.

Nor does it follow that because the Probate Court cannot act upon a will which took effect in 1849, that that Court cannot appoint a guardian of the estate of a minor acquired under such a will. It is a question of authority, to be decided by the statute. Now, the statute does not give that Court power to admit to probate a will made prior to 1850. That is the ground of the decision in *Grimes* v. *Norris*.

But the statute does give to the Probate Judge of each county power to appoint a guardian for all minors who " have no guardians legally appointed," and " who are inhabitants or residents in the same county, or who shall reside without the State and have estate within the county." There are no other limitations than these upon the power of the Judge to appoint ; certainly there are none whatever which make the power of appointment in the least degree dependent upon the time at which the estate of the minor was vested

Fitch *v.* Miller.

in him.   Any such distinction would be senseless, for the necessity of guardianship results from the ownership of property, not from the period of its acquisition.

Norton, J. delivered the opinion of the Court—Field, C. J. and Cope, J. concurring.

This is an action of ejectment, in which the plaintiffs claim title to the premises in dispute as devisees under the will of Henry D. Fitch, deceased, and the defendants claim title under a sale of the same premises by the guardian of said devisees, under the order of a Probate Court, and the question for decision is, whether the provisions of the statute under which such sale was made, were complied with in the particulars essential to the validity of the title acquired by the purchasers.   The proceedings were not conducted with the careful regard to the directions of the statute which their importance required, and various irregularities appear in the record. The point of difficulty in this, as in other similar cases, is to see that the safeguards provided by the law for the protection of the estates of infants against the frauds or negligence of those to whose care they are necessarily intrusted have been observed, and at the same time not to allow innocent purchasers to be divested of their property by minute objections to the form or manner in which the proceedings have been conducted not affecting their substance.   The difficulty of some of the objections raised, and the importance of this case, as well on account of the value of the property, as of the influence of its decisions in affecting the rights of parties under such sales, induced us to order a reargument.   After a careful consideration of these objections, we are satisfied that they are not sufficient to show that the proceedings were defective in substance, so as to render a title under them void.

In order to render the sale effectual to confer a valid title, the Probate Court must have acquired jurisdiction of the case by the presentation of a proper petition by the guardian.   What shall be the contents of such a petition, is prescribed by section twenty-four of the "Act to provide for the Appointment and Prescribe the Duties of Guardians," which is as follows: "To obtain an order for

such sale, the guardian shall present to the Probate Court of the county in which he was appointed guardian, a petition therefor, setting forth the condition of the estate of his ward, and the facts and circumstances on which the petition is founded tending to show the necessity or expediency of a sale, which petition shall be verified by the oath of the petitioner."

The necessity or expediency of the sale must arise from one or more of these circumstances : 1st. The existence of debts due from the ward, which cannot be paid out of his personal estate and the income of his real estate.    2d. The insufficiency of the income of the estate of the ward to maintain the ward and his family, or to educate his family, or to educate him when a minor.    3d. That it would be for the benefit of the ward that his real estate, or a part thereof, should be sold, and the proceeds put out on interest, or invested in some productive stock.    (Secs. 15, 20, 21.)

In order to enable the Court to judge of this necessity or expediency, the first requisite of the petition is, that it shall set forth the condition of the estate ; and it is objected that the petition in this case fails to comply with this requirement, in not stating the value of the several items and parcels of property of which the estate consists.    But this is not directly required by the statute, and it would seem to be only necessary to state the condition in such manner as to enable the Court to judge of the existence of one or more of the circumstances above specified, rendering a sale necessary or expedient.    In this case the items of which the estate consists, real and personal, are stated, and its situation and condition, so far as to enable the Probate Court to judge whether or not it would be for the benefit of the wards that their interest in the Sotoyome ranch should be sold, and the proceeds thereof put out on interest. It may be observed that the circumstances authorizing an executor or administrator to apply for a sale of real estate, are not the same as in the case of a guardian, and that the petition of the former is expressly required to state the condition and value of the respective portions.

It is objected, that in consequence of the petition stating the interest of the several wards in the Sotoyome Rancho to be two thousand acres each, instead of four thousand acres, the Court only

acquired jurisdiction to order a sale of an undivided two thousand acres; and that hence, as to the other two thousand acres, the title has not passed, and as to such interest, the plaintiffs were entitled to recover. The petition, however, asks for a sale of their whole interest, and the order of sale was of the whole interest, and the sale and order of confirmation was of the whole interest. The question arising, therefore, is whether a mistake in the petition in stating the amount of the wards' estate is fatal to the jurisdiction, either as not truly setting forth the condition of the estate, or the amount of the property which the ward has, so as to present to the Court the proper data by which it can judge of the portion necessary to be sold. In the case of *Stuart* v. *Allen*, (16 Cal. 501) the Court say: " It will be remarked that it is immaterial, so far as this question of jurisdiction is concerned, whether the statements of the petition are true or not; the jurisdiction resting upon the averments of the petition, not upon proof of them." A purchaser at a sale ordered by the Probate Court must look to the proceedings so far as to see that such a petition was presented as gave jurisdiction of the case to the Court; and if the petition is on its face sufficient for this purpose, he is not required to investigate the truth of the allegations. He is bound to know the law, but he cannot be supposed to have any knowledge of the facts on which the petition is predicated; and to require a strict investigation of these facts by each bidder, and to make the title depend on their being ultimately found to be accurate, would greatly embarrass, if not defeat, such proceedings, and would be a manifest injustice to innocent purchasers. The guardian had the right to ask, and did ask, for authority to sell the whole interest, and the Court had jurisdiction to order, and did order, a sale of the whole interest. If by reason of this mistake the purchasers obtained an estate or interest in the land double that which they supposed they purchased, and the wards, on the other hand, received one-half the value of their property, it might have been a sufficient ground for setting aside the sale by a direct proceeding for that purpose; but it does not reach the point of the jurisdiction of the proceeding by the Court, or authorize the sale to be treated as a nullity when questioned collaterally. In fact, by reason of the adult owners joining in the sale, the whole title to

each portion of the land was sold, and the purchasers have obtained no greater estate or interest than they bid and paid for; and whether the wards have obtained their proper portion of the purchase money, should not affect the rights of the purchasers. They are not responsible for the disposition of the money after they have paid it.

It is also objected that the petition does not set forth " the facts and circumstances on which the petition is founded, tending to show the necessity or expediency of the sale." These facts and circumstances, it may be assumed, are those which show the existence of at least one of the three contingencies above specified, in which a sale may be ordered. It must be conceded that this petition does not state in direct terms that there are debts to be paid, or that the income is not sufficient for the support and education of the wards, or that it would be for the benefit of the wards that the property should be sold and the proceeds put out at interest. The petitioner appears to have thought it appropriate to set forth facts showing the existence of all the three contingencies, without in express words averring the existence of either. But no form is prescribed for the petition; and if by a fair application of all the statements, it can be seen that there is an averment that one or more of those three contingencies existed, it was sufficient to give jurisdiction. We think the allegations of the petition present a case for the judgment of the Probate Court, whether the guardian should have leave to sell the interest of the wards in the Sotoyome ranch, on the ground that it would be for their benefit that it should be sold, and the proceeds put out at interest. The guardian also evidently considered it necessary that a sale should take place, in order to realize the necessary means for the support of the wards. For this purpose the petition alleges that the wards have a slight increase from a portion of their estate (not the Sotoyome ranch); that this portion cannot be sold without great sacrifice; that they have no other means of support, save such pittance as she, their guardian and mother, can divide from her private property among all her children, which is small and uncertain; and if the property is sold, the income of the proceeds, after paying debts, will be sufficient for their ordinary support and education. Although not alleged

Fitch *v.* Miller.

directly, it is apparent that the intention is, by these statements, to present the fact that the income of the estate of the wards was not sufficient for their support and education.    Without deciding whether these averments are sufficiently explicit to present a case for the jurisdiction of the Probate Court, on the ground of the insufficiency of the income for the support and education of the wards, we are satisfied that the averments, as to the situation of the Sotoyome ranch, present a case for the exercise of that jurisdiction, upon the ground that it would be for the benefit of the wards that their estate in that ranch should be sold, and the proceeds put out at interest.    It is stated that the Sotoyome ranch is unproductive ; that the greater part of it is occupied by persons who refuse to pay any rent, and are cutting down and destroying the trees ; and that it is subjected to heavy taxes, which will amount to more than the value of the land by the time all the infants come of age.    These facts certainly tend to show the expediency of a sale of the wards' estate in this ranch, and the investment of the proceeds at interest.    It is not the question whether the Probate Court decided most judiciously in ordering the sale, but whether the facts alleged presented a case for the exercise of its judgment. The Probate Court adjudged that a sale was expedient, and accordingly ordered a sale, as well for the maintenance and education of the wards, as that the proceeds remaining over and above what should be sufficient for such maintenance and education, might be put out and invested.    We think the Probate Court had jurisdiction to make that order.

It is further objected, that the real estate of these wards could not be sold by an order of the Probate Court, because its disposition was controlled by the will of Henry D. Fitch, under which they held.    The provision of the will is, that the devisees may each " take out " one-half of his share when he comes of age, and the other half not until all the other children come of age.    Whatever effect this provision might have in controlling the use of the property until the devisees were entitled to take its control by the terms of the will, the title to the property, the estate of the devisees, undoubtedly vested in the devisees upon the death of the testator. The statute authorizes the sale of the estate of any person under

guardianship, when necessary or when for his benefit, in certain cases. The language is sufficiently comprehensive to authorize the sale of this estate ; and if legally made, to transfer whatever estate these wards had to the purchasers. The plaintiffs have no title left on which they can maintain this action.

The circumstance that it was not necessary to probate this will, the testator having died before the adoption of the common law, cannot affect the liability of the property of these wards to be sold under the order of the Probate Court. The fact that they were infants residing in this State, and had estates to be taken care of, authorized the appointment of a guardian, and subjected them and their property to the control of the Probate Court.

It is further objected, that the real object of this sale was to effect a partition between these infants and their adult codevisees ; and that as the Probate Court has no jurisdiction of such a proceeding, this sale was void. There is no doubt that all the matters appearing in these proceedings relating to the interests of the adults, are foreign to the only object which could be rightfully effected, and their presence has prevented the direct and simple statement in the petition of the facts necessary to give the Court jurisdiction of the proceeding, and has occasioned some directions to be inserted in the order of sale which are inappropriate. But we do not think they defeat the effect of the other allegations, which, in the view we have taken of them, are sufficient to give the Court jurisdiction of the proceeding for the purpose of selling the estate of the minors. The Court had power to order a sale of the estate of the infants, when the facts rendering it necessary or expedient were brought before it by the petition of the guardian. Such facts were so brought before it, and it only ordered their estate to be sold. The fact that the adults joined in the sale wrought no detriment to the infants, and may have benefitted them. That a partition may have incidentally resulted, cannot render the sale void, if in other respects it was legal. The same facts existed in the case of *Reid* v. *Allen*, (18 Texas, 242) but were not urged or considered as an objection to the validity of the sale.

It is objected that the provision in the order of sale authorizing the adult owners to bid off any of the land to be sold, to the amount

that would be coming to them, was a disposition of the land in the nature of an exchange, and not a sale, which must be for cash; and hence the sale is void. But if only the interest of the minors was sold, there would be nothing coming to the adults, and this provision would be a nullity and harmless; or if, as was probably contemplated, the adults joined the sale, their bidding, without paying cash, to the amount of their interest, still left the whole of the minors' interest to be bid and paid for in cash. The result is that the sale of the minors' interest was a cash sale.

There are some other objections which have been alluded to in the briefs, but which only touch the regularity of the proceedings after jurisdiction had been acquired; which, therefore, were only the subjects for correction on an appeal, and cannot be considered when arising collaterally in this action. (*Sibley* v. *Waffle,* 16 N. Y. 190–1.)

Judgment affirmed.