[No. 12327.   In Bank. — March 1, 1890.]

GEORGE H. SMITH ET AL., APPELLANTS, v. M. V. BISCAILUZ ET AL., RESPONDENTS.

GUARDIAN'S SALE — NECESSITY — EXPEDIENCY OF SALE FOR INVESTMENT — SUFFICIENCY OF PETITION — JURISDICTIONAL AVERMENTS. — Sales by guardians are authorized either when necessary to maintain or educate the ward, or when expedient for the purpose of a more profitable investment of the proceeds.   If the sale is asked upon the ground of necessity, the petition must state the condition of the ward's whole estate, real and personal, as in the ordinary case of a sale by an executor or administrator; but if a sale of realty is asked on the ground of expediency for better investment of the proceeds, the petition need only state the condition of the estate to be sold, as in the case of sale of mining claims by an executor or administrator, and the omission of the petition to describe and show the condition of the ward's personal estate will not affect the question of jurisdiction.

ID. — GENERAL STATEMENT OF CONDITION OF LAND. — As affecting the question of jurisdiction, no just distinction can be made between general and specific allegations of fact which in substance amount to the same thing, and tend to show that the land to be sold is unproductive and expensive.

ID. — DEFECTS IN PETITION — SUPPLYING GENERAL FACTS IN PROOF — CONSTRUCTION OF CODE — PRESUMPTION UPON COLLATERAL ATTACK. — It seems, that general facts showing either the necessity or the expediency of a guardian's sale not set out in the petition may be supplied by proofs at the hearing and stated in the decree, under section 1537 of the Code of Civil Procedure, and that such general facts are merely those ultimate facts showing a contingency, as prescribed in sections 1777 and 1778 of the Code of Civil Procedure, as distinguished from the more explicit facts and circumstances showing the condition of the estate required by section 1771 to be stated in the petition; and that it must be presumed upon collateral attack, where such general facts are stated in the decree, that the court had all the necessary proofs before it.   But the petition in this case being held sufficient to show jurisdiction, irrespective of section 1537 of the Code of Civil Procedure as amended in 1874, the question as to its construction and effect is not finally decided.

Id. — BOND FOR SALE — APPRAISEMENT — FILING OF PAPERS. — If the bond required upon a guardian's sale is referred to in the decree of sale as having been duly executed, it must be held to have been delivered to the judge, approved and filed before the sale, though not marked filed until after the sale; and if the affidavit to the appraisement shows that it was sworn to before the confirmation of the sale, and it appears that the oaths of the appraisers appointed before the sale and their certificate of appraisement bear the same date as their appointment, the appraisement must be held to have been filed before the confirmation, though not marked filed.   A paper is filed when delivered to the proper officer; and indorsing it with the time of filing is no part of the filing.

Id. — SUFFICIENCY OF APPRAISEMENT — COLLATERAL ATTACK. — The sufficiency of the appraisement in form to give information to the court to enable it to exercise its judgment in confirming the sale is not open to be controverted upon a collateral attack.

APPOINTMENT OF GUARDIAN — NOTICE — APPEARANCE AND CONSENT. — An order appointing a guardian for a minor under fourteen years is not void for want of formal notice to the person having custody of the minor, and to resident relatives of the minor, if all persons entitled to such notice appear and consent to the appointment.

ESTATES OF DECEDENTS — DECREE OF DISTRIBUTION — GENERAL DESCRIPTION — COLLATERAL ATTACK. — When a decree of distribution purports to distribute undivided interests in all the property of the decedent, including the estate particularly described, and other property not known or discovered which may have belonged to the decedent, and in which his estate may have an interest, such decree will pass title to lands of the decedent omitted from the particular description, and is not void for uncertainty of description of such lands, the general description being sufficient, upon a collateral attack, to include omitted lands which may be shown by evidence to have in fact belonged to the decedent at the time of his death; and a deed from one of the distributees conveying an undivided part of such lands will pass the fee-simple of such undivided part.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial.

The facts are stated in the opinion of the court, and more particularly in the opinion rendered upon the first hearing of the cause.

*F. H. Howard, Bicknell & White, R. Dunnigan,* and *Smith & Patton,* for Appellants.

*Chapman & Hendrick,* and *W. J. Foley,* for Respondents.

BEATTY, C. J.—A former decision of this case is reported in 21 Pac. Rep. 15. (See *infra*.) After that decision was filed a rehearing was granted on the second point discussed in the opinion; viz., the alleged insufficiency of the guardian's petition for the sale of Victoria Jordan's interest in the real property in controversy.

For the purpose of that decision we conceded, without deciding, that the petition was radically defective, but held that the order of sale was rendered valid by the clause added to section 1537 of the Code of Civil Procedure by the amendment of 1874.

Upon the rehearing, counsel for the respective parties have elaborately reargued both the question as to the sufficiency of the petition and the effect of said amendment.

Appellants contend that the petition in this case cannot be distinguished on principle from the petition which was held sufficient in *Fitch* v. *Miller*, 20 Cal. 352. Respondents, conceding the binding authority of that decision, point out what they contend are substantial differences between the two petitions. No doubt there are differences, but whether they are substantial and vital or not is a question not free from difficulty.

What the statute then required—as it does now—in order to give the court jurisdiction to proceed was a verified petition by the guardian setting forth the condition of the estate of his ward, and the facts and circumstances on which the petition was founded tending to show the necessity or expediency of a sale. (*Fitch* v. *Miller*, 20 Cal. 382; Code Civ. Proc., sec. 1781.)

Respondents contend that a first essential of every such petition is, that it shall show by express averment that it contains a description of the whole estate of the ward, real and personal,—not only that which the guardian desires to sell, but all his other estate,—and that it shall set forth the condition of the whole estate; i. e., the situation of the different parcels, and whether they

are improved or unimproved, vacant or occupied, productive or unproductive. But this is a stricter construction than was given to the statute in *Fitch* v. *Miller*.

The petition in that case did not purport to contain a description of *all* the estate of the wards, but only of the estate devised by their father. *Non constat* that they had no other estate. But, as court and counsel seemed to have *assumed* in discussing the petition that it purported to set forth the entire estate of the wards, the case cannot be considered authority for the proposition that a petition deficient in this particular would satisfy the requirements of the statute. It does, however, decide that in the case of guardian's sales, unlike sales by executors or administrators, it is not necessary to state in the petition the values of the separate items of the ward's estate or their condition, except so far as may be necessary to enable the court to determine upon the necessity or expediency of a sale. (Page 383.) In other words, it holds that the sole office of the petition is to state facts, including the condition of the estate, from which the necessity or expediency of a sale may be inferred, and that the only reason for stating the condition of any part of the estate is that its condition may affect the question of such necessity or expediency. In consonance with this view, it was held that the petition there in question was sufficient to give the court jurisdiction to order the sale, although confessedly it contained no statement of the condition of the estate of the wards (other than that which was to be sold), except that it yielded a small income, and could not be sold without a sacrifice. And even as to the property to be sold, the allegations of the petition, though somewhat more detailed and specific than those of the petition in question here, merely tended to show that the land was unproductive and expensive.

These allegations, it was held (pages 385, 386), presented a case for the judgment of the court upon the question

of expediency of a sale of the land and investment of its proceeds.

Turning to the petition in this case, we find that, fairly construed, it purports to contain a description of all the real estate of the ward, but it is completely silent as to the existence of personal estate.

Before considering to what extent this omission affects the sufficiency of the petition, we will notice the further contention of respondents, that it is also radically defective in failing to show the condition of the real property sought to be sold.

As above stated, the petition in *Fitch* v. *Miller* was more detailed and specific as to the condition of the property to be sold than is the petition here; but the difference between the two is not essential. Here it is shown that the land to be sold consists of three sixteenths, undivided, of about three hundred acres of land subdivided into lots containing from seventeen and one half to twenty-two acres respectively, and that "said real estate is now unproductive, and may remain so for years, and a constant expense without income."

Substantially, this is all that was alleged in the petition sustained in *Fitch* v. *Miller*. The allegations there, though more specific, only tended to show that the land to be sold was unproductive and expensive. And as affecting the question of jurisdiction, it seems to us that no just distinction can be made between general and specific allegations of fact which in substance amount to the same thing.

Our conclusion, on the authority of *Fitch* v. *Miller*, is, that if this petition was insufficient in any particular to give the court jurisdiction to order the sale, it was solely because it failed to describe and show the condition of the ward's personal estate.

Counsel for respondents contend that this omission constituted a radical and incurable defect in the petition, and they cite many decisions concerning sales of dece-

dents' estates in support of their argument.    But there is this distinction to be observed between sales by guardians and sales by executors or administrators: ordinarily, no sale of a decedent's estate is authorized except when it is *necessary*, — 1. To pay family allowance; 2. Debts of the decedent; 3. Expenses of administration; or 4. Legacies.

Mines and mining interests belonging to estates of decedents are, however, an exception to this rule.    They may be sold, when it is expedient to do so, in the interest of the estate, although the proceeds are not needed to pay debts, expenses, etc.    (Code Civ. Proc., secs. 1529–1533.)

But none of the cases cited by respondents arose under these provisions.    On the contrary, they all depended on sections 1536 and 1537, and could be sustained only upon the ground that they were shown to be *necessary*.

For this purpose, and in order to enable the court *to intelligently exercise its judgment in the selection of the property of the estate which can be most advantageously sold*, the condition and value of all parts of the estate must be set forth in addition to the other matters enumerated in section 1537.    (*Estate of Boland*, 55 Cal. 315, and cases cited.)

But in case of mining property which is sought to be sold for the interest of the estate, it is not required that the petition should set forth the condition of any property except that which is to be sold.    (Code Civ. Proc., sec. 1530.)    The manifest reason of this is, that the expediency of such sales is in no wise dependent upon the condition of other portions of the estate.

This brief consideration of the difference of the provisions concerning the sale of mining claims and other real estate of decedents affords a valuable clew to the proper construction of the provisions concerning sales by guardians.

Sales by guardians are authorized in two cases:

1. When *necessary,* to maintain or educate the ward; 2. When *expedient,* for the purpose of a more profitable investment of the proceeds.    (Code Civ. Proc., secs. 1777 et seq.)

To obtain an order for such sale, the guardian must present a verified petition to the court by which he was appointed, "setting forth the condition of the estate of his ward, and the facts and circumstances on which the petition is founded, tending to show the necessity or expediency of a sale."   (Code Civ. Proc., sec. 1781.)

This section applies indifferently to necessary and to expedient sales, and should receive a sensible and reasonable construction, according as the sale is asked on the one ground or upon the other.

If the sale is asked upon the ground that it is *necessary,* there is the same reason for requiring a statement of the condition of the ward's whole estate as exists in the ordinary case of a sale by an executor or administrator; i. e., to enable the court to decide what particular part it is best to sell.

But if the sale is asked upon the ground that it is for the interest of the ward that some portion of his land should be sold and the proceeds invested, it is manifest that the condition of the property to be sold is the only matter to be inquired into, and that the policy or expediency of selling it is in no wise affected by the condition of other portions of his estate.

The beginning and the end of the inquiry in such case is, whether the price of the land to be sold can be invested to better advantage in something else; and a petition which fairly presents this question ought to be sufficient to give the court jurisdiction to make the order, as it is by express enactment in the case of mining claims belonging to estates of decedents.

We think it is doing no violence to the letter, and that it is in perfect accord with the spirit, of section 1781 of the Code of Civil Procedure to hold that its requirements

are fully satisfied by stating *the condition of the estate to be sold,* when, as in this case, the sale is asked upon the sole ground that for the benefit of the ward his real estate or some part of it should be sold, and the proceeds otherwise invested.

We conclude that the petition in this case was sufficient to give the probate court jurisdiction to make the order of sale, and that the sale made in pursuance thereof was valid and effectual, without reference to the amendment of section 1537 of the Code of Civil Procedure.

This conclusion leads to the same result reached in our former opinion, and it is accordingly again ordered that the judgment and order appealed from be and they are reversed as to all parties except Miller and Guy, and as to them said judgment and order are affirmed.

McFarland, J., Sharpstein, J., Paterson, J., Thornton, J., and Fox, J., concurred.

The following is the opinion above referred to, rendered in Bank on the 21st of March, 1889:—

Foote, C.—Action to quiet title under section 381 of the Code of Civil Procedure. Judgment passed for the defendants, from which, and an order refusing a new trial, this appeal is taken.

The plaintiffs deraigned their title to the lands in dispute from one P. Beaudry, for the purpose of establishing their own source of title to certain lots in the city of Los Angeles, amounting in the aggregate to about 350 acres of land.

All parties deraign their title from one A. Z. Jordan, in whom, they stipulate, the title to the lands in controversy was vested on the twenty-sixth day of June, 1873.

Upon that day Jordan conveyed an undivided half of the lands, except one subdivision, to Catalina Batz. Afterward, on the twenty-eighth day of July following, Jordan died, still seised of the remaining interest in the lands.

He left as his sole heirs his widow, Mary, and two children, the defendant Victoria Jordan, and her sister, who died pending the administration of his estate. Under his will, and by inheritance from the deceased child, the widow became the owner of five eighths, and the child Victoria of three eighths, of an undivided half of certain lands involved in this controversy, which interests were allowed to them by a decree of distribution.

It is admitted by all that Beaudry acquired the interest of the widow of Jordan and that of Catalina Batz, and except as to the interests of the plaintiffs Gay and Miller, there seems to be no contention, except as to the title to the land originally vested in Victoria Jordan by the decree of distribution.

Beaudry purchased the interests of all the plaintiffs here, except those of Gay and Miller, at a guardian sale, made on behalf of the ward Victoria, an order for which was made by the judge of the probate court of Los Angeles County, and conveyances executed to him by the guardian of the minor, on the fourteenth day of August, 1876.

The ward, after coming of age, just before the institution of this suit, deeded the property to one Biscailuz, who defends this action joined with her.

1. It is claimed by the respondents that the order of the probate court appointing the guardian for Victoria was void for the want of notice; 2. That the petition for the sale of the lands of the minor was insufficient to give the court ordering the sale jurisdiction to do so; 3. That the additional bond required by the statute on the sale of real estate was not *filed* until after the confirmation of the sale; 4. That the inventory and appraisement of the ward's estate, ordered by the court, was not *filed* until after the confirmation of the sale of the ward's real estate, and that the description of the land was insufficient, as contained in the inventory.

(*a*) That part of section 1747 of the Code of Civil

Procedure which prescribes the notice required for the appointment of a guardian of a minor under fourteen years of age, such as the one here concerned, is as follows:—

"Such appointment may be made on the petition of a relative or other person on behalf of the minor. . . . . Before making such appointment, the court must cause such notice as such court deems reasonable to be given to any person having the care of such minor, and to such relatives of the minor residing in the county as the court may deem proper."

In the present instance, the mother (of the minor under fourteen years of age), having the care of her, preferred the petition for the appointment of the guardian, Joseph Jordan, the uncle of the minor; and her only other relatives residing in the county, two cousins, Joseph P. Jordan and Anton Jordan, filed in the court their written consent to the appointment of the uncle, Joseph, to be the guardian.

After which, and upon the same day, the court appointed him guardian in accordance with the petition and consent thus filed.

Conceding, without deciding, that the language, "the court must cause such notice as such court deems reasonable to be given to any person having the care of the minor, and to such relatives of the minor residing in the county as the court may deem proper," required the court to have some proper notice given to the person having the care of the minor, and to such of her relatives residing in the county as the court may deem proper, as a prerequisite to a valid appointment of her guardian, nevertheless the appearance by petition of the mother of the minor, under whose care she was, and of the other necessary parties, to whom notice was requisite, by their written consent filed in the cause, was proof that they all had notice of what was in progress before the court, and had waived any more formal notice.

To have ordered and given any such notice, under the existing state of facts, would have been an idle and useless ceremony, which the law does not impose upon courts of justice.

The minor being of tender years, and not supposed to be able fully to protect her rights, the law provides notice to be given in some proper way to certain persons, who may appear and do what is just in her interests.

It is not required that any notice be given to the minor; and if the persons to whom the notice is intended to give the opportunity to defend the minor's rights appear in court, and by petition and written consent ask that tribunal to appoint the guardian whom it does appoint, we cannot perceive how any harm can come to the minor, or how the law in its substance is violated.

The case of *Burroughs* v. *Decouts*, 70 Cal. 373, seems to concur in the view of the statute we have thus taken, and to go further, and hold that where there is a collateral attack, such as is here made, upon the action of the court appointing a guardian, and the record affords sufficient evidence that all the near relatives of a minor residing in the county are consenting to the appointment, it is sufficient to warrant the presumption of the existence of the jurisdiction of the court and the validity of its acts, so far as the statutory notice to such parties is concerned.    (*Brodribb* v. *Tibbits*, 63 Cal. 80.)

The order appointing the guardian in this matter, showing that all the near relatives of the minor residing in the county were the mother, the uncle appointed guardian, and the two cousins of the minor, that the mother filed the petition, and the cousins filed their consent to the request for the appointment of the uncle as guardian, it would seem, both upon reason and authority, that such appointment was valid.

(b) Conceding, under the decision of the appellate court in *Fitch* v. *Miller*, 20 Cal. 352, that the petition for the sale of the minor's real estate was defective in not

"setting forth the condition of the estate of his ward, and the facts and circumstances on which his petition is founded tending to show the necessity or expediency of a sale," as prescribed by section 1781 of the Code of Civil Procedure, which was in force in all its substantial features at the date of the order of sale in controversy, it becomes a material question whether or not the provisions of section 1537, which was also in force at the date of the order of sale, validate the decree made in this instance.

Sections 1789 and 1808 of the Code of Civil Procedure make that last section applicable to guardian sales.

The clause of section 1537 material to the matter under consideration is: " If any of the matters here enumerated cannot be ascertained, it must be so stated in the petition; but a failure to set forth the facts showing the sale to be necessary will not invalidate the subsequent proceedings, if the defect be supplied by the proofs at the hearing, and the general facts showing such necessity be stated in the decree."

The decree of sale in the case in hand contains this statement: " On such hearing, the said guardian was examined on oath, and after a full examination, it appearing to this court that it would be for the benefit of said minor that said real estate be sold, and the proceeds of said sale be placed at interest, the said real estate being now unproductive and liable to heavy taxes."

According to the statute, and the opinion of the appellate court in *Miller* v. *Fitch, supra*, the necessity for a sale exists when it is expedient, or, what is the same thing, can be made with propriety.

It must be presumed on this collateral attack, from the decree just recited, that the court determined upon sufficient proof that the condition of the estate and the facts and circumstances surrounding it are such as render a sale necessary or expedient.

When the statute with reference to what the decree

must contain in order to validate the sale (notwithstanding the failure of the petition to state the condition of the estate, and the facts and circumstances going to show a sale to be necessary or expedient) provides that a failure to set out those facts and circumstances in the petition shall not invalidate the sale, if the decree contains a recital of "general facts" showing such necessity, it means to declare that neither the failure to set out the special facts and circumstances which, taken together, show the necessity or expediency of the sale, nor the failure to state the condition (which appears of necessity from and is a part of the special facts and circumstances showing the necessity or expediency of a sale), shall invalidate the sale if the decree shall recite the "general facts" above stated.

Therefore, it becomes pertinent to inquire and determine what is meant by the words "general facts" showing the necessity or expediency of a sale, as used in section 1537, *supra.*

An examination of sections 1777, 1778, and 1781, Code of Civil Procedure, which are the same in language as the sections in the same code at the time this sale was made, shows that sections 1777 and 1778 prescribed certain ultimate facts or contingencies under which the real estate of the minor may be sold by the guardian, and which must appear in some form in the petition therefor to give the court jurisdiction.

An inspection of section 1781, *supra,* shows that by it certain special facts and circumstances showing the condition of the estate, and tending to show the necessity or expediency of the sale of the whole or a part of the minor's real estate, must be set out in the petition.

In the last clause of section 1537, *supra,* it is plain that a different meaning is given to the word "facts," where it is said, "but a failure to set forth the facts showing the sale to be necessary will not invalidate the subsequent proceedings," from that which is given to the words

"general facts," where it is said, "if the defect be supplied by the proofs at the hearing, and the general facts showing such necessity be stated in the decree."

What construction is to be given to the language of that clause, when taken in its entirety, in order that the whole clause may be intelligible and convey a plain and consistent meaning?

It would seem that "general facts" must be held to mean those ultimate facts showing a contingency as prescribed in sections 1777 and 1778, *supra*, and that the words, "the facts showing the sale to be necessary," must refer to those more explicit facts and circumstances set out in section 1781, from a statement of which, also, would necessarily appear the condition of the estate.

In no other way can the language of all the sections, *supra*, be made to harmonize.

The decree of sale does, as we have seen, state the "general facts" showing a necessity for the sale of the real estate of the minor, in almost the exact language of section 1778, *supra*, showing the existence of one of the contingencies provided for in that section. And on this attack we must presume that at the hearing the court had all the necessary proofs before it.

The decree of sale was therefore valid and binding.

(*c*) The appellants further contend that the sale was void because the bond to be given under section 1788, *supra*, to the probate judge, before the sale of the land, although approved and executed before, was not filed until after the sale.

(*d*) That it was void, also, because the appraisement of the property, although made within a year of the time of the making of the sale, as required by section 1550 of the Code of Civil Procedure, was not *marked* filed before the confirmation of the sale, and that there was no sufficient description in it of the property to be sold.

According to the recitals of the decree of sale, "before making said sale said guardian, as required in and by

said order of sale, duly executed an additional bond to the state of California," etc.

The bond could not have been "duly executed" unless it had been delivered to the judge, and all other acts performed which the statute required. (*Joseph* v. *Dougherty*, 60 Cal. 360.)

If delivered to the judge and approved, as the stipulation shows it was before the sale, that was a sufficient filing.

A paper is filed when delivered to the proper officer; and indorsing it with the time of filing is not a part of the filing. (*Tregambo* v. *C. M. & M. Co.*, 57 Cal 506.)

It therefore must be conceded that a bond in accordance with law was executed, approved, and filed before the sale, which is all that is required under the section of the Code of Civil Procedure, *supra*.

(*e*) The affidavit attached to the inventory and appraisement shows that it was sworn to before the confirmation of the order of sale, before the clerk of the court. The decree of the court, after describing the real estate sold, recites "the said real estate was appraised within one year of the time of such sale, and that the sum aforesaid [that is, the amount of purchase-money at the sale, which was previously set out in the decree] was at least ninety per cent of the appraised value thereof."

In addition, the stipulation shows that "the appraisers were appointed on July 29, 1876 [before the sale], their appointment was made out by the clerk on the same day, and that upon that day, also, they took the oath of office."

The oath of the appraisers to their bills for services and their certificate of appraisement also bore the same date.

It is apparent, therefore, that the appraisement had been substantially filed in the court before the confirmation of the sale, and the marking it filed by the clerk was not essential to its validity.

(*f*) As to the question whether the appraisement in the form made gave sufficient information to the court to enable it to exercise its prerogative in rendering judgment, it may be said that in a collateral attack the court (being, as in this case, for such proceedings of general jurisdiction) had, by virtue of the petition filed and exhibited to it, jurisdiction to determine the sufficiency of the evidence upon the matter in hand, and its judgment in the premises cannot here be controverted. (*Denis* v. *Winter*, 63 Cal. 17.)

This disposes of the case as affecting the defendants and all of the plaintiffs who have appealed, except Miller and Gay.

(*g*) Miller obtained an undivided one half, or eight sixteenths, of his lot through Jordan, Batz, and Beaudry; he obtained five sixteenths through the decree of distribution to the widow of Jordan. The other three sixteenths of the lot belonged, under the decree of distribution, to the minor, Victoria Jordan, and now by her deed to Biscailuz. Her interest in this lot was not sold at the guardian sale, so that the judgment as to Miller is correct, and upon his part no points or authorities have been filed.

(*h*) As to the interest of Gay, it appears that Jordan, the father of Victoria, died seised and possessed of the whole of the tract which Gay now claims. The latter obtained from Beaudry title to the interest of the widow, which she received under the decree of distribution, if that decree is not void for the want of sufficient description of the land which Gay claims.

The minor's interest was never sold, so that the question here is, whether or not Gay can look to the decree of distribution as fixing his title.

The decree recites, among other things: "It is hereby adjudged, ordered, and decreed . . . . that the residue of the estate of said A. Z. Jordan, deceased, now remaining in the hands of such executor, which estate is herein-

after particularly described, and other property not now known or discovered, which may belong to the said A. Z. Jordan, deceased, or in which the said estate may have an interest, be and the same is hereby distributed as follows, to wit: An undivided five-eighths part is hereby assigned, transferred, set over, and delivered and distributed to the said Mary Jordan, now Mary Huarte, the said widow of the said A. Z. Jordan, deceased, and the other undivided three eighths to Victoria, the minor child of the said A. Z. Jordan, deceased. . . . .

"The following is the personal property and a particular description of the real estate remaining in the hands of the said executor belonging to the estate of the said A. Z. Jordan, deceased, being the residue of the said estate referred to in this order, and of which distribution is ordered, adjudged, and decreed, as aforesaid."

Here follows the particular description of certain lands, in which that of Gay is not mentioned.

It was evidently the intention of the judge, in making the decree, to distribute to the widow an undivided five eighths, and to Victoria Jordan three eighths, of any lands in which the estate of the decedent had an interest.

Is this description sufficient upon a collateral attack to include the land of Gay?

It is clear that the estate did have an interest in this land; for it is admitted that by deed Jordan had acquired it, and he had never parted with it.

Is the decree to be pronounced "a nullity for uncertainty of description," "because" the court can see that "nothing is described"? Is it one where the description is so defective that "the purchaser," relying "upon the description," and applying the ordinary rules of evidence to such a matter, can find nothing? If not, then the decree on a collateral attack, such as this, is not void. (De Sepulveda v. Baugh, 74 Cal. 468.)

It is conceded here, upon all sides, that Jordan purchased the property for a valuable consideration. And

the description in the decree, under the test of the application of the ordinary rules of evidence to the subject, can readily be shown to represent a specific and certain piece of land, the property of the decedent at the date of his death.

The decree of distribution is not, therefore, void upon this attack for want of a description of the land in which Gay claims an interest.

As he claimed none of the interest of Victoria Jordan in the property, the court was correct in deciding that he was seised in fee-simple of an undivided five eighths of the lot.

We therefore advise that the judgment and order be reversed as to all the parties who appeal except Miller and Gay, and that as to them the same be affirmed.

Belcher, C. C., and Hayne, C., concurred.

The Court. — For the reasons given in the foregoing opinion, the judgment and order are reversed as to all the parties who appeal except Miller and Gay, and as to them the judgment and order are affirmed.