## McNAUGHTON et al. v. LEWIS.

No. 17066—Opinion Filed Dec. 14, 1926.

Rehearing Denied April 12, 1927.

**1. Judgment—Judgment of County Court in Probate Proceeding—Errors not Subject to Review in Independent Proceeding to Set Aside.**

Errors committed by the county court on fact, or law, in the exercise of its probate jurisdiction over subject-matter and persons properly before the court, are not subject to review or retrial in an independent proceeding to set aside a final judgment resulting from the trial.

**2. Guardian and Ward—Sale of Land—Fraud—Bona Fide Purchasers.**

Fraud committed in the course of a judicial proceeding for the sale of real estate over which the court has acquired jurisdiction will not defeat the title of the holder through mesne conveyances for value, unless the fraud be of an extrinsic nature and known to the purchaser, or be reflected in the sales proceedings to the extent of putting a reasonably prudent person on inquiry.

**3. Same—Errors in Course of Appraisement Foreclosed by Confirmation Where no Appeal is Taken.**

Errors occurring in the course of making an appraisement of land involved in a guardianship sales proceeding enter into the hearing on the confirmation of sale. The judgment of the court confirming the sale forecloses these questions, unless there is an appeal from the judgment in the manner provided by statute.

**4. Same—Judgment Invalidating Guardian's Sale not Sustained.**

Record examined; held, to be insufficient to support judgment for the plaintiff.

(Syllabus by Stephenson, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Carter County; W. F. Freeman, Judge.

Action by Alice Bell Lewis against F. D. McNaughton, David A. Shepherd, Telfair Hodgson, and W. H. Irwin, to quit title to real estate and to recover for rents and royalties from the land. Judgment for plaintiff, and defendants bring error. Reversed and remanded, with directions.

J. E. Whitehead, for plaintiffs in error.

R. L. Disney, for defendant in error.

Opinion by STEPHENSON, C. The plaintiff commenced her action against the defendants to quiet title to real estate, and for rents and royalties received by the defendants from the land. The trial of the cause resulted in judgment for the plaintiff. The defendants have perfected their appeal to this court, and assign several of the ruling of the court in the trial of the action as cause for reversal.

The land involved in this action consists of 50 acres of the allotment of the plaintiff, situated near the town of Graham, in Carter county. The father of the plaintiff, who was her guardian, sold the land through a probate sale proceeding in the county court of Carter county to C. T. Baringer, for $400, in June, 1912. The purchaser sold and conveyed the land by his warranty deed to W. R. Hurley for $650 in December, 1912; W. R. Hurley sold and

conveyed a two-thirds interest in the land by his warranty deed to W. H. Irwin and F. D. McNaughton, two of the plaintiffs in error, for $434, in January, 1913; W. H. Irwin, in July, 1913, sold and conveyed by his warranty deed an undivided interest in the land to David A. Shepherd and Telfair Hodgson, the other two plaintiffs in error.

The land was rough, rocky, rolling land suited for pasturage, and had no oil value until the discovery of oil in the vicinity of the land in the year 1916. The plaintiffs in error leased the land for oil and gas development, and have since realized about $10,000 in bonuses and royalties. The plaintiff married in the year 1920, and commenced this action in August, 1924, a few months within the three-year statute of limitation, after attaining her majority, for bringing an action to set aside and cancel the probate sale proceedings for the sale of her land.

The plaintiff alleged, for her cause of action, that the guardian and C. T. Baringer fraudulently procured the sale of her land through the county court of Carter county, but the petition does not point out the acts of the parties relied on as fraud; (b) that the land was sold at private sale for less than 90% of its appraised value; (c) that the guardian used $100 of the purchase price to procure the relinquishment of a lease on the property executed and delivered by the guardian to A. A. Davis.

The defendants answered that the county court appointed appraisers on May 18, 1912, who duly qualified for, performed the service and made sworn return of the appraisement to the county court on May 18th for $400; that the guardian made return of sale to the court on May 18th, showing C. T. Baringer as the purchaser of the land on the latter date, for the sum of $400.

The plaintiff replied that the county court duly appointed appraisers, who made and returned their appraisement of the land to the county court on March 19, 1918, for the sum of $550, that the appraisement had not been set aside by the court at the time of the second appraisement and sale of the land for $400. It is the further contention of the plaintiff that the record shows that the appraisers qualified in the city of Ardmore on the date that the second appraisement was returned; that the land was situated 30 miles from the place, and that the appraisers could not have gone out onto the land by the usual means of travel at that time, to view the land, before they made their return.

J. B. Champion, a member of the Ardmore bar, testified that he acted as attorney for the guardian, and that it was impossible to procure a bid of 90% of the first appraisement of $550, on account of the land being appraised above its value.

Section 1280, C. O. S. 1921, reads in the following language:

"No sale of real estate at private sale shall be confirmed by the court unless the sum offered is at least 90% of the appraised value thereof, nor unless such real estate has been appraised, within one year of the time of such sale. If it has not been so appraised, or if the court is satisfied that the appraisement is too high or too low, appraisers must be appointed, and they must make an appraisement thereof in the same manner as in case of an original appraisement of an estate. This may be done at any time, **before the sale** or the **confirmation thereof.**"

The statute provides that if an appraisement is made too high or too low in the first instance, the court shall appoint new appraisers, who are required to reappraise the property, either before the sale, or before the confirmation.

The witness testified that he applied to the court to set aside the first appraisement on account of the appraisement being above the value of the land; that the court set aside the appraisement and appointed the second appraisers, who made and returned the second appraisement for $400 on May 18th.

The plaintiff states that the order setting aside the first appraisement was insufficient for the reason that it referred to the appraisement as having been made in April, 1912, whereas the appraisement, in fact, was made in March.

There had been but one appraisement of the land, and the order, necessarily, would be considered as relating to the appraisement made in March, even though the order had not referred to the date of the appraisement. The fact that the order referred to the appraisement as having been made in April did not result in causing uncertainty as to the appraisement to which it related; the order would have been sufficient if it had not referred to the date on which the appraisement was made.

The witness testified that he went out on the streets and found three parties who lived near the land and were familiar with the land and its value; that he made application to the court to appoint them for making the reappraisement. The witness fur-

ther testified that the parties reappraised the land on their knowledge and information of the land, and its value, and did not go out and review the land after they were appointed; the return of appraisement is regular on its face in every respect. A party who operated a store at Fox, near the land at the time the second appraisement was made, testified, in the trial of this cause, that he was familiar with the tract of land, and knew the market value of the land in the vicinity of the land involved in this suit at the time of the sale, and that the reasonable market value of land in the same section was from $7 to $12 per acre. The witness further testified that the guardian requested him to bid on the land in question at the sale. The most that the plaintiff can contend for is that the attorney for the guardian, the appraisers, and the county court misconceived the duty of the appraisers in respect to going out to view the land after their appointment. If the law required the appraisers to go out and view the land, under the circumstances in this case the failure was an error committed by the appraisers in the course of the performance of their duty; the acceptance of the appraisement, and its use by the county court, was an error, if any, committed in the course of the exercise of acquired jurisdiction over the subject-matter. If it was wrong, it was an error of law committed by the court in reaching its judgment confirming the sale for $400 after it had acquired jurisdiction over the subject-matter.

The plaintiff introduced the deposition of one of the appraisers as evidence in the trial of the cause, which was taken 12 years after the sale. The appraiser testified that he did not remember making the appraisement and did not remember the value of the land in the vicinity of the land in question. the witness did not say that he did not make the appraisement or that he did not know the value of the land in the same vicinity at the time of the sale. The evidence of the appraiser is not inconsistent with that of the attorney for the guardian who testified in the trial. The other appraisers, who made the second appraisement, did not testify.

In the case of Tiger v. Drumright, 95 Okla. 174, 217 Pac. 453, the record disclosed that the oath of the appraisers bore a date subsequent to that of the appraisement. The court said:

"It is contended, therefore, that this appraisement shows on its face that the appraisers did not take and subscribe the oath until after the appraisement was made, and that this brings the case within the decision of this court in Winters v. Okla. Portland Cement Co., 65 Okla. 132, 164 Pac. 965. In that case there was no appraisement at all, and the question involved was not as to the irregularity of the appraisement. An appraisement having been made and filed, the regularity and sufficiency thereof was a proper matter for determination by the court upon confirmation of sale, and the sale having been confirmed, the irregularities complained of are not subject to attack in a collateral proceeding. Welch v. Focht, 67 Okla. 275, 171 Pac. 730; Baker v. Vadder, 83 Okla. 140, 200 Pac. 994; Beachy v. Shomber (Kan.) 84 Pac. 547."

In the case of Ross v. Groom, 90 Okla. 270, 217 Pac. 480, the oath of the appraisers bore a date subsequent to that of the appraisement. This court said:

"The question of the regularity and sufficiency of the appraisement in this case was a proper matter for determination by the court at the time of the confirmation of the sale, and, the sale having been confirmed, the irregularities complained of are not subject to attack in a collateral proceeding. The appraisement was actually made and filed, and as to whether the appraisers exceeded their authority or whether the appraisement was properly made were proper questions for the county court to determine. Welch v. Focht, 67 Okla. 275, 171 Pac. 730, L. R. A. 1918 D, 1163; Baker v. Vadder, 83 Okla 140, 200 Pac. 994; Smith v. Bicailuz, 83 Cal. 344, 21 Pac. 15, 23 Pac. 314; Beachy v. Shomber. 73 Kan. 62, 84 Pac. 547.

As to the effect of the determination of the question by the county court in the hearing on the confirmation of sale, it was further said by the court:

" 'Irregularities in the appraisement have not heretofore been considered by the court sufficient to invalidate the sale of an administrator or curator. * * * But, even if the appraisement be conceded to be irregular, the subsequent confirmation of the report, in which that appraisement was specifically called to the attention of the probate court, and of all parties interested in said lands, cured the irregularity' " (Noland v. Barrett, 122 Mo. 181, 26 S. W. 692, 43 Am. Rep. 572.)

As the court confirmed the sale in this case, necessarily it had to conclude that the appraisers, under the circumstances in this case, were not required by law to go out and view the land after appointment. before making return of the appraisement. If it be said that the court reached a wrong conclusion on this point, it was an error of law occurring in the course of the exercise

of lawful jurisdiction, as the court had the subject-matter properly before it. The situation of the plaintiff in this respect is that of offering to retry a question of law decided in an action previously tried by another court of competent jurisdiction, which had the same subject-matter and the same parties or their grantors before it. It has long been a fundamental principle of law in our jurisdiction that a question once tried between parties in a court of competent jurisdiction, which had the subject-matter and the parties before it, cannot be retried between the same parties or their privies in interest, in relation to the same subject-matter, in another action. It was said by this court in the case of Moffer v. Jones, 67 Okla. 171, 169 Pac. 652:

"The distinction between what is requisite to authorize the court to act at all, and that which is necessary to sustain its action in a particular manner, must not be lost sight of, because it is only those matters which render the proceedings void that are available here."

In relation to the effect of a judgment of the county court reached in the exercise of its probate jurisdiction, the court said:

"The county court in the exercise of its probate jurisdiction is a court of general jurisdiction, and its judgment and proceedings are entitled to like presumptions accorded to that of the district court."

As to what matters may be questioned in an independent proceeding, the court said:

"The scope of the inquiry is confined to the question whether the county court had jurisdiction of such proceedings, and its orders will not be held void for errors or irregularities occurring during the progress of the proceedings."

As to the effect of the judgment of confirmation in relation to errors committed by the court in the exercise of proper jurisdiction, this court, in the case of Foreman et al. v. Chapman et al., 95 Okla. 132, 219 Pac. 692, said:

"After a county court obtains jurisdiction of a guardian sale proceeding, all irregularities, and defects between the acquirement of jurisdiction and the order of confirmation are cured by the order of confirmation, to the extent that the order of confirmation may not be collaterally attacked on account of such irregularities; but this rule does not extend to jurisdictional matters."

The plaintiffs in error have cited the case of Kidd v. Stephens (Ky.) 192 S. W. 44, and Leavell v. Carter (Ky.) 112 S. W. 1118, to the effect that the appraisers were not required to go on to the property where they were familiar with the land and its value, but we leave the question for consideration in an appeal from an order denying or confirming a sale, as the question under the circumstances in this case was foreclosed by the judgment of confirmation.

In relation to the payment of $100 of the purchase price of the land for the relinquishment of the lease, C. T. Baringer testified that he did not know of the existence of the lease, and did not have anything to do with securing the release. A. A. Davis, who held the lease from the guardian, testified that he furnished provisions to the father of the plaintiff to the extent of $100, and that the guardian executed and delivered the lease to him to secure the payment of the money; that the understanding was that he would release the property on the payment of the debt. The return of sale was made on the 18th day of May; the lease was filed for record on June 4th and the sale was confirmed on June 8th. The records show that the guardian filed an application in the county court setting forth that the minor was indebted to Davis for the sum of $100 for supplies for the maintenance of the ward, who was plaintiff below, and prayed the court for an order allowing the guardian to pay the indebtedness. The court entered an order authorizing and directing the guardian to pay the $100 in settlement of the debt, which was secured by the lease. Davis testified that he did not know where or how the guardian procured the money for the payment of the indebtedness; that he released the claim against the property upon the payment of the debt. If the judgment of the court authorizing and directing the guardian to pay the debt which was secured by the lease was unlawful, it was an error committed in a proceeding unrelated to the sale proceeding involved in this suit.

The plaintiffs in error testified that they did not know, or have knowledge of any of the matters complained about by the plaintiff at the time they purchased the property involved in this suit; and that they paid value for the property without notice of the plaintiff's claim.

On the record in this appeal the plaintiffs in error cannot be affected by any of the matters complained about by the defendant in error, who was plaintiff below; they come within the rules applicable to bona fide purchasers of property. Brooks v. Tucker, 83 Okla. 255, 201 Pac. 643.

The conclusions we have reached make it

unnecessary to consider other questions involved in this appeal.

The cause is reversed and remanded, with directions to enter judgment of dismissal of plaintiff's action.

By the Court: It is so ordered.

Note.—See under (1) 15 C. J. p. 1021, §442; 34 C. J. p. 518, §824. (2) 35 C. J. p. 76, §1119. (3) 28 C. J. p. 1192, §334. (4) 4 C. J. p. 1164, §3181.