## LeFLORE v. HANSEN et al.

No. 19304. Opinion Filed Sept. 9, 1930.

Commissioners' Opinion, Division No. 2.

W. F. Semple and Hugh Ownby, for plaintiff in error.

Green & Pruet and Carpenter & Carpenter, for defendants in error.

BENNETT, C. This was an action in the district court of Jefferson county by Louie Fudge LeFlore to set aside a guardianship sale of lands allotted to him as a member of the Choctaw Tribe of Indians. Plaintiff was of one-thirty-second degree of Indian blood, and his father, Louie LeFlore, was his guardian until the arrival at majority of said ward September 11, 1924. Plaintiff and his guardian were men of fair education and intelligence. The father had been for years a business man and had occupied places of responsibility.

Plaintiff alleged that he was the owner and entitled to possession of the land in controversy, which was detained by the defendants; that the defendants claimed title under conveyances of the nature of which he was ignorant, but he alleges that they are void, and asked that they be canceled.

April 4, 1927, Martin Hansen and J. W. Clark filed answers and cross-petitions, the former setting up a general denial and his chain of title, and praying that his title to the land be quieted; the latter, in addition to a general denial, set up his mortgage alleged to be a first lien, and each pleaded that he was a purchaser in good faith, for value, and without notice, of any infirmity in the title. They also pleaded the 2-3-5 and 15 year statutes of limitations. September 13, 1927, by an amended reply, plaintiff pleaded that the sale of said lands to one A. J. Waldock by plaintiff's guardian was void because the purchase money was not paid and the deed was not delivered, and because said sale was made without appraisement.

It was stipulated that defendant Martin Hansen had been in possession of the land sued for since the date of his deed, January 21, 1909, and that John W. Clark held a mortgage thereon, executed by Hansen, and that neither Hansen nor Clark had any notice of the claim of plaintiff, or of any infirmity in the title to said land except only such as was imparted by the face of the probate record; that Martin Hansen paid to A. J. Waldock for said land $4,000. cash. Considerable improvements seem to have been placed thereon.

The defendants relied upon the correctness of the proceeding in the county court of Haskell county, authorizing the sale of such lands to A. J. Waldock and the deed made in pursuance thereof. The plaintiff contends that such guardianship proceeding and the conveyance made thereunder to said Waldock were absolutely void upon the grounds hereinbefore set out. The parties waived a jury and tried the case to the court, who found for defendants, and plaintiff appealed.

There was evidence of a contradictory nature as to the payment of the consideration for the conveyance authorized under the probate proceeding; the guardian testified in behalf of his son, the plaintiff, to the effect that not all of the purchase money was paid; that probably $1,400 or $1,700 was actually paid; that he attached a draft for the purchase money to the deed after it was signed, and presented the same through the Farmers National Bank at Oklahoma City to the purchaser, who, in some way, secured possession of the deed without paying the draft, but, that, a few weeks later, he did receive a part of the money as above indicated; that he never sued for the balance, but did mention the matter to the banks through which he dealt, but without avail. He, however, admitted filing guardian's reports showing between $2,000 and $3,000 cash on hand belonging to plaintiff, and later applied for an order to invest, and did invest over $1,400 of his ward's money in other real estate about that time; that his ward had no money except the proceeds of the sale of land to said Waldock.

Evidence of the purchaser, on the other hand, is clean-cut to the effect that he paid the full purchase price. Some evidence tending to impeach the purchaser is introduced, but it is not needful that we should consider that here.

The court found generally for the defendants, and that, we assume, included a finding that the purchase money for this property had been fully paid. We think the evidence clearly supports that finding. The guardian's evidence is entirely unsatisfactory; he admits that he does not know how much was paid him on the price of the land; he made no effort to collect any more, and it is stipulated that the attorney who conducted the guardianship proceedings for him had an office in the same building with the guardian, and, if present, would testify that he had at no time ever heard any complaint from the guardian or any one else to the effect that the purchase money had not been paid.

There is left for us the main point in the controversy: Was the guardianship deed void by reason of a lack of jurisdiction of the court to order the sale? Plaintiff contends that it was void for that no appraisement of the land was had. The record shows without question that the county court of Haskell county made the order of sale covering said real estate in controversy on November 7, 1908; that the lands were sold under this order to said purchaser, Waldock, on January 2, 1909, and that, on the 25th of January, 1909, an order, after proper notice, was filed in the cause confirming said sale and directing conveyance to be executed to purchaser, and that a deed was executed on January 26, 1909, conveying to him the lands in conformity to said order, which deed was promptly recorded. The record discloses that, on November 24, 1908, a formal order was made by the county judge of

Haskell county appointing Sam Rose, Henry Cooper, and J. L. Friar of Haskell county, appraisers of the estate of Louie Fudge LeFlore within the county of Jefferson in said state, with directions that they view and appraise the said estate and make return thereof according to law. The appraisers, after taking the proper oath, filed in the said probate proceeding, on December 1, 1908, an instrument entitled "Appraisal of land before sale at private sale," wherein J. L. Friar and Henry Cooper, as appraisers, appraised each of these parcels of land by setting down opposite the description of each tract its value. This appraisal is regular in every respect, and on the reverse side thereof there appears a verified statement showing their charge for three days' service at $2 per day each. The verification indicates that the bill is correct and just. and that the services have been duly rendered and expense incurred as therein set forth.

Plaintiff introduces Louie LeFlore as a witness, who said that he knew Henry Cooper, J. L. Friar, and Sam Rose in 1908; that they lived at Stigler in Haskell county, Okla.; that they were appointed appraisers; that witness went into court to have the sale of these lands confirmed, and discovered that there had been no appraisement, and that Mr. Caldwell, the court clerk, went out and secured appraisers; that the court clerk, Mr. Caldwell, is now dead; that the appraisers did not view the lands. Witness waited at the courthouse half an hour until the appraisement was made and signed; that Sam Rose worked in the bank; Friar was a real estate man and Mr. Cooper was a cattleman; all lived at Stigler; that this was perhaps 200 miles from where the land lies; that Mr. Cooper was and is a high-class business man. Witness does not remember the date of filing of the appraisement, but thinks the confirmation was made in January, 1909. Henry Cooper was a cousin of witness and is an Indian citizen and United States marshal. Witness had never seen the land until the day before giving his testimony. All this testimony was objected to by defendants as tending to contradict the record, and is not binding upon defendants who relied upon the correctness of the record.

Henry Cooper, witness for plaintiff, said that he was United States marshal; lived at Stigler in Haskell county, Okla., in 1908; was one of the appraisers; that he did not view the land after his appointment; that he swore to the appraisement before a no-

tary public of Haskell county; does not know whether or not the other appraiser viewed the land.

Cross-examination: That he had a great deal of business in Jefferson county dealing in lands prior to and since 1908, and was familiar with lands in the immediate vicinity of the Louie Fudge LeFlore land, and prior to that had allotted lands to Vivian Cooper right near the land of Louie LeFlore. Witness filed the bill for compensation showing the three days, but that he received no pay; that the appraised value as fixed by that report was a fair cash value of the land at that time. Witness was at that time dealing in Indian lands, buying and selling, and that in such sales it was the custom, in both federal and state courts after statehood, where an approving court wished to get the value of land, to get a report from the government field agents, and that all these cases were referred to the probate attorney and he required an appraisement as a basis of values: that lands in that immediate vicinity are owned by members of his family now, and that nothing has enhanced the value of land there save in cases where oil has given it additional value.

W. F. Carter, witness for the defendant, engaged in the abstract, real estate and loan business, is familiar with land values in Jefferson county, and the land in controversy; that in 1908 and 1909 it was worth $12.50 to $15 an acre.

The county court seems not to have been willing to use less than all of the available means at his hand of finding out the value of this land. The record shows that the county court caused the Indian Department to make an investigation of the value of this land, and appraised the same, and the said report was filed as a part of the proceedings and before confirmation on January 11, 1909. The valuation therein found is substantially as shown in the testimony.

There was much other testimony, but it is not necessary to extend this record by excerpts therefrom. It will be observed: First, that there is not a word of evidence here which tends to show that this land sold for less than its fair value; not even the guardian so stated; second, from the evidence, which we deem the more credible and the more reasonable, we think it fairly appears that the purchaser paid $2,800 for this land, its full value, and exceeding its appraised value, if, in fact, it was appraised; third, no return of any purchase money

is tendered, either in the pleading or in the proof, so we are not disturbed in this proceeding with any overpowering equity in favor of the infant. We are faced with one simple proposition: Assuming that the appraisers did not, in fact, view the land prior to making their appraisal of it, was it such an irregularity or defect as to deprive the court of jurisdiction to make the sale and confirm it and order a conveyance to the purchaser? and, next, was there sufficient on the record to infect a subsequent purchaser with notice of want of jurisdiction so as to prevent title passing to him? It must be admitted that the record showed an appraisement of this land, which, on its face, was perfectly regular. Plaintiff's attack upon it is based upon the reasoning that since the order appointing appraisers and the appraisement bears date November 24, 1908, and since the proof, although the record is silent, shows these lands to be such a distance from Stigler that the appraisers could not, and, therefore, did not, in fact, view the land after appointment and before the appraisal. Plaintiff's contention is not sound. In the case of McNaughton v. Lewis, 124 Okla. 181, 254 Pac. 972, the question of sufficiency of appraisal was assailed, and the court in the opinion says:

"The most that the plaintiff can contend for is that the attorney for the guardian, the appraisers, and the county court misconceived the duty of the appraisers in respect to going out to view the land after their appointment. If the law required the appraisers to go out and view the land, under the circumstances in this case the failure was an error committed by the appraisers in the course of the performance of their duty; the acceptance of the appraisement, and its use by the county court, was an error, if any, committed in the course of the exercise of acquired jurisdiction over the subject-matter. If it was wrong, it was an error of law committed by the court in reaching its judgment confirming the sale for $400 after it had acquired jurisdiction over the subject-matter."

In that case, as in this, the plaintiff introduced the statement of one of the appraisers many years after the sale. The other appraisers did not testify. In this case one only of the appraisers testified. It is made clear in the McNaughton Case, supra, that the appraiser did not state that he was ignorant of the value of the land. In the case at bar the proof is undisputed that the appraiser who testified did know the value of the land. He was a real estate man and had dealt in land in that vicinity for years and had allotted to a member of

his family land in that immediate vicinity. In short, there is not a word of testimony which intimates that the appraisers either did not know the value of the land or did not honestly appraise it at its fair value. In the case of Tiger v. Drumright, 95 Okla. 174, 217 Pac. 453, the court said:

"It is contended, therefore, that this appraisement shows on its face that the appraisers did not take and subscribe the oath until after the appraisement was made, and that this brings the case within the decision of this court in Winters v. Okla. Portland Cement Co., 65 Okla. 132, 164 Pac. 965. In that case there was no appraisement at all, and the question involved was not as to the irregularity of the appraisement. An appraisement having been made and filed, the regularity and sufficiency thereof was a proper matter for determination by the court upon confirmation of sale, and the sale having been confirmed, the irregularities complained of are not subject to attack in a collateral proceeding. Welch v. Focht, 67 Okla. 275, 171 Pac. 730; Baker v. Vadder, 83 Okla. 140, 200 Pac. 994; Beachy v. Shomber (Kan.) 84 Pac. 547."

In Ross v. Groom, 90 Okla. 270, 217 Pac. 480, the oath of the appraisers bore a date subsequent to that of appraisement. The court said:

"The question of the regularity and sufficiency of the appraisement in this case was a proper matter for a determination by the court at the time of the confirmation of the sale, and, the sale having been confirmed, the irregularities complained of are not subject to attack in a collateral proceeding. The appraisement was actually made and filed, and as to whether the appraisers exceeded their authority or whether the appraisement was properly made were proper questions for the county court to determine." (Citing Welch v. Focht and Baker v. Vadder, supra; also, Smith v. Biscailuz, 83 Cal. 344, 21 Pac. 15, 23 Pac. 314, and Beachy v. Shomber, 73 Kan. 62, 84 Pac. 547.)

It was further said by the court:

"'Irregularities in the appraisement have not heretofore been considered by this court sufficient to invalidate the sale of an administrator or curator. * * * But, even if the appraisement be conceded to be irregular, the subsequent confirmation of the report, in which that appraisement was specifically called to the attention of the probate court, and of all parties interested in said lands, cured the irregularity.'" (Noland v. Barrett, 122 Mo. 181, 26 S. W. 692, 43 Am. Rep. 572.)

In Foreman v. Chapman, 95 Okla. 132, 219 Pac. 692, the court said:

"After a county court obtains jurisdic-

tion of a guardian sale proceeding, all irregularities, and defects between the acquirement of jurisdiction and the order of confirmation are cured by the order of confirmation, to the extent that the order of confirmation may not be collaterally attacked on account of such irregularities; but this rule does not extend to jurisdictional matters."

In Moffer v. Jones, 67 Okla. 171, 169 Pac. 652, it is said:

"The distinction between what is requisite to authorize the court to act at all, and that which is necessary to sustain its action in a particular manner, must not be lost sight of, because it is only those matters which render the proceedings void that are available here."

Further on, the court said:

"The county court in the exercise of its probate jurisdiction is a court of general jurisdiction, and its judgment and proceedings are entitled to like presumptions accorded to that of the district court."

"Where a judgment is entered in a court of general jurisdiction and the record is silent as to the existence of the facts that gave the court jurisdiction, it will be presumed that all the facts necessary for the proper rendition of the judgment have been found to exist before the judgment was rendered." Wolf v. Gills, 96 Okla. 6, 219 Pac. 350.

In Tuttle v. Sowards, 137 Okla. 297, 279 Pac. 331, the court said:

"In an action in the district court to cancel an administrator's sale of real estate, where it affirmatively appears from the proceedings in the county court, which are attached to plaintiff's petition, that the court found, in effect, that the land sought to be sold was not a homestead, and the proceedings are otherwise regular, it is not error for the district court to sustain a demurrer to the petition."

See, also, Fuller v. Holderman, 114 Okla. 136, 244 Pac. 417. In Estes v. Pickard, 141 Okla. 60, 283 Pac. 1004, the fraud alleged arose on the question of whether the land was the homestead of plaintiff and the legal necessity for its sale, and upon the alleged failure to give notice upon the petition to sell. The court indicates that such matters appear to have been properly before the probate court, and its adjudication became final. The court says:

"We do not find sufficient allegations of fraud, extraneous the record, to support an action such as the present one, which, in effect, is for the purpose of canceling an administrator's deed and the probate proceedings relating thereto. Ward v. Thompson, 111 Okla. 52, 237 Pac. 569; Cochran v. Barkus, 112 Okla. 180, 240 Pac. 321; McNaughton v. Lewis, 124 Okla. 181, 254 Pac. 972."

In Berry v. Tolleson, 68 Okla. 158, 172 Pac. 630, there was a proceeding by a guardian to sell land of his wards. The record was regular and showed a sale of the lands for cash, whereas, in fact, the proceedings were used only to put through an exchange of lands between the guardian and the purchaser. Not a dollar was paid in. The plaintiff there, relying upon the record, invested his money in the lands so sold. This court reversed a judgment for defendants below and held Berry a purchaser for value and without notice.

In this case, the ward received the value of his land. There was no hurry about the proceeding indicating fraudulent purpose. The appraisement, though dated the same day as the order appointing appraisers, was not filed for many days thereafter, and the confirmation was more than a month subsequent thereto. The appraisers' account duly verified shows three days' service. The appraisers knew the value of the land and so appraised it. There is no fact connected with this record sufficient to arouse the suspicion of an ordinarily prudent man.

Defendants forcibly present various statutes of limitation as determinative of this case, but our view makes it unnecessary to pass on these.

The judgment of the trial court for the defendants is abundantly supported by the evidence and the record, and the same is in all respects affirmed.

HERR, HALL, DIFFENDAFFER, and TEEHEE, Commissioners, concur.

By the Court: It is so ordered.